768 So.2d 319 (2000)
Jimmy DEVANCE, Appellant,
v.
STATE of Mississippi, Appellee.
No. 1999-KA-01472-COA.
Court of Appeals of Mississippi.
October 3, 2000.
*320 Robert Charles Stewart, Gulfport, Attorney for Appellant.
Office of the Attorney General by Billy L. Gore, Attorney for Appellee.
BEFORE McMILLIN, C.J., LEE, AND PAYNE, JJ.
PAYNE, J., for the Court:

PROCEDURAL HISTORY
¶ 1. This is an appeal from the Circuit Court of Harrison County, First Judicial District, where Jimmy Devance was convicted on July 28, 1999, of kidnaping, aggravated assault and armed robberyall counts arising out of the same event. Devance was sentenced to twenty-five years each on the kidnaping and armed robbery charges, and twenty years on the aggravated assault charge, sentences to run concurrently. The circuit court overruled Devance's motion for a new trial or judgment notwithstanding the verdict (JNOV). Feeling aggrieved, Devance appeals his convictions.

*321 FACTS
¶ 2. Sometime around midnight on May 4, 1997, Jimmy Devance, who had worked for Mr. Onno Hill as a "fix-it" man, went to Hill's door on the pretense that Devance's truck broke down. Hill invited Devance in and gave him a glass of water while Hill got dressed. Hill and Devance then got into Hill's car, presumably to take Devance home, or back to work on Devance's truck. After Hill removed the car-theft device from his Cadillac, Devance attacked him with a knife, showed Hill a gun and told him to get in the house. Devance bound Hill to his bed with a combination of duct tape and coat hangers and robbed Hill of two guns, approximately $400 and the Cadillac. Early the next morning, after struggling for several hours, Hill managed to free himself and walked across the back yard to his daughter's house. Hill awakened his daughter and son-in-law, Wanda and Willie Adam, by screaming Wanda's name. Wanda found Hill on her patio covered in blood and remnants of duct tape wrapped around his wrists and legs. Wanda and Willie described Hill as being "scared to death," "totally upset," and "just hysterical." When asked by Wanda what happened, Hill exclaimed "that [s.o.b.] Jim Devance tried to kill me." Hill died of natural causes in January 1998, almost nine months after the assault, and eighteen months before Devance's trial.
¶ 3. Devance was arrested on October 1, 1997, in Woodland Park, Colorado, after leaving a McDonald's. He was taken into custody and interviewed, and the videotape of that interview was admitted in the trial. In the videotaped statement, Devance apparently claimed he had been drinking, and that when he came out of an "alcoholic blackout" he was inside Hill's Cadillac driving through the state of Texas.
¶ 4. The Cadillac was recovered at a cemetery in Liberty County, Texas, the same day of the assault. Detective Jim Bates of the Liberty County Sheriff's Department testified that he learned from the Gulfport Police Department teletypes of warrants and affidavits for Jimmy Devance. Detective Bates also testified that he learned of an address in Cleveland, Texas, where Devance may have been, but did not find the appellant there. Instead he found the appellant's son, Jimmy Joe Devance. Jimmy Joe Devance testified as a hostile witness admitting that his father told him and his brother that Devance (the father) had "tied up an old man, took his car and [a] gun ... robbed him in Gulfport, and left him tied up." He further testified that his father had come to Texas in the Cadillac, and gave the pistol taken from Hill to a man named Johnny Mize in exchange for a ride to the bus station. The son stated that he (the son) drove the Cadillac from Mize's house and left it in the cemetery. Additionally, the son testified that he saw some money in his father's possession that had a blood stain on it.

APPELLANT'S STATEMENT OF ISSUES
¶ 5. With this appeal, Devance raises the following issues for our review:
I. The Court erred in failing to prohibit the testimony of the victim's daughter and son-in-law regarding statements made to them by Mr. Hill. The hearsay statements did not have sufficient indicia o[f] reliability, prevented the defendant from cross-examining his accuser and should not have been admitted. [MRE 803(2)Excited Utterance Exception]
II. The Court erred in failing to suppress the video statement of Jimmy Devance in that the defendant was under the influence of drugs and/or alcohol and could not intelligently waive his right to an attorney or comprehend what he was doing.
DISCUSSION
I. Mississippi Rules of Evidence 803(2) Hearsay exception; excited utterance.
¶ 6. Prior to the trial, the State filed a motion for hearsay exception determination, *322 and Devance filed a motion in limine to suppress the testimony of Wanda and Willie Adam regarding statements Hill made at the time of the incident. The circuit court ruled the statements admissible under Mississippi Rules of Evidence 803(2) which states:
The following are not excluded by the hearsay rule, even though the declarant is available as a witness: ...
(2) Excited Utterance. A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.
In White v. Illinois, 502 U.S. 346, 356, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992), the U.S. Supreme Court stated, "[W]here proffered hearsay has sufficient guarantees of reliability to come within a firmly rooted exception to the hearsay rule, the Confrontation Clause is satisfied." The circuit court stated that in its opinion, the White case and MRE 803 itself, which finds the availability of the declarant immaterial, resolve the confrontation issue.
¶ 7. Devance argues that it is unclear whether Hill's statements were in reference to the defendant, claiming that the Adams and the State made that leap without testimony in support of their conclusion. Devance claims that the Adams' testimony "identified Mr. Devance by name only, a name he shared with his son, and should not have been admitted." However, no evidence exists in the record that Hill knew the son, or that the son had ever been to Hill's home. The son testified that he had lived in Cleveland, Texas, all of his life. Also, the testimony from the Adams and the Appellant in the video interview is that Devance worked for Hill at his home on numerous occasions. Additionally, if Hill had meant to refer to Devance's son, it is reasonable for a jury to infer that he would have made that clear during the nine months between the incident and his death. Furthermore, as the State asserts, this would go to the weight given to the testimony by the jury, not the admissibility.
¶ 8. Devance questions the reliability of Hill's statement in light of testimony that the seventy-seven year-old victim drank alcohol, the attack occurred in the middle of the night, and no determinative testimony was given concerning lighting conditions when the attack occurred. Wanda Adam's testimony was that Hill invited his attacker in, gave him a glass of water while Hill got dressed, and that, although the initial attack occurred in the car, Hill was forced to return into the house where he was then bound with duct tape and coat hanger wires. There was no testimony that the activities in the house were done in the dark. It would appear that Hill had plenty of time to recognize his attacker. Additionally, from the defense attorney's questioning of the Adams, we learn that Hill always kept a front and back porch light on and there is a street light that shines on Hill's property. No evidence is in the record from the hospital or otherwise indicating whether Hill had anything to drink that night. The Adams stated that Hill kept some alcohol in his home and sometimes had a drink or two, but they did not indicate that Hill had a drinking problem. Testimony from the Adams, elicited by the defense, was that Hill only wore glasses to read, not for driving or watching television or to do anything around the house, which indicates that Hill would have been able to recognize his attacker without wearing his glasses.
¶ 9. Devance also questions whether too much time had passed between the attack and the statement to qualify Hill's remarks as excited utterances. The circuit court found in the suppression hearing that immediately upon freeing himself, still covered in blood and duct tape bindings, Hill told the first person he saw what happened. The circuit court was of the opinion that this is the most classic case of an excited utterance it had seen. Devance contended in the suppression hearing that even if the initial statement by Hill was an *323 excited utterance, anything else he said to Wanda and Willie Adam would not be an excited utterance. The comment to MRE 803(2) states:
As in the present sense impression exception, the essential ingredient here is spontaneity. With respect to the time element, the issue is the duration of the excited state. This, depending on the exact circumstances of a case, can vary greatly.
Wanda testified as to what Hill said between the time he woke her and when he gave his statement to the Gulfport Police Detective in the emergency room. Wanda testified that "the medical technicians got there right away, and we just went on to the hospital."
¶ 10. Even if testimony concerning what Hill said after his initial statement was outside the time for excited utterance, it would be harmless error. Hill's declaration of who the perpetrator was, the testimony of Devance's son, and Devance's video statement are sufficient evidence against Devance regardless of additional testimony from the Adams. However, it is reasonable for the lower court to find that Hill's statements were spontaneous, reliable, and within the time to be classified as an excited utterance in this circumstance. Therefore, the circuit court was correct in allowing the testimony and we affirm this issue.

II. Video Statement of Jimmy Devance.
¶ 11. Devance argues that his video statement given to the Colorado officer should not have been admitted because he stated to the investigator that he was "wired." He claims that the statement was elicited in violation of his Fifth Amendment right to counsel and was not voluntarily given. Devance also claims the State failed to meet its burden of proving that Devance was given his Miranda rights and that he knowingly and intelligently waived his rights.
¶ 12. Devance points out that the U.S. Supreme Court in Moran v. Burbine, 475 U.S. 412, 421, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986), states that relinquishment of Miranda rights has to be voluntary, a product of free and deliberate choice, made with full awareness, both of the nature of the right to be abandoned and consequences of the decision to abandon it. Also, the trial court must look to the "totality of the circumstances surrounding the interrogation" to determine whether the requisite level of comprehension existed for a court to conclude that the Miranda rights have been waived. Id.
¶ 13. The Mississippi Supreme Court stated in Sills v. State, 634 So.2d 124, 125 (Miss.1994) (citing Pinkney v. State, 538 So.2d 329, 342 (Miss.1988)):
When a trial judge concludes that a "confession is admissible, his finding becomes a finding of fact which will not be reversed on appeal unless it is manifestly in error or contrary to the overwhelming weight of the evidence."
Also, this Court may disturb suppression hearing findings made by the trial court "only where there is an absence of substantial credible evidence supporting [them]." Nicholson v. State, 523 So.2d 68, 71 (Miss.1988).
In determining whether a confession was freely and voluntarily given the circuit court sits as the fact finder. The trial judge first must determine whether the accused has been adequately warned. And, under the totality of circumstances, the court then must determine if the accused voluntarily and intelligently waived his privilege against self-incrimination.
McCarty v. State, 554 So.2d 909, 911 (Miss. 1989). On the issue of voluntariness, the standard of proof for admissibility is beyond a reasonable doubt. Davis v. State, 551 So.2d 165, 169 (Miss.1989).
¶ 14. At the suppression hearing, Detective Jim Rocco of the Woodland Park, Colorado Police Department testified that *324 he advised Jimmy Devance of his Miranda rights prior to the video interview. Detective Rocco also testified that Devance appeared oriented and aware that he was under arrest, and that Devance did not appear to be under the influence of drugs or alcohol, nor did he smell of alcohol. The detective stated that when questioned, Devance said he was not under the influence of drugs or alcohol. In response to the defense attorney's questioning, Detective Rocco stated that when Devance said he was "wired," the detective took that to mean Devance was stressed out. The detective clarified that although Devance may have had "track marks" on his arms, this does not mean he was under the influence and impaired at that time. Detective Rocco also testified that he did not promise any reward or leniency, nor threaten Devance or use any other coercion to convince Devance to give his statement.
¶ 15. In referring to the video statement, the circuit judge said:
The court is of the opinion that the statement by the defendant was freely, voluntarily and intelligently made without any forces, promises, threats or acts of coercion, violence, duress or any influence of any kind having been placed upon him or any promises ... given to him. I did note specifically ... based upon a question by the investigator, the defendant said that he was not drunk, but that he was wired. And he then went on to say that he doesn't know "what this guy gave me the other day." So there was no indication of any recent consumption of drugs or alcohol. The defendant appeared very responsive to the questions and gave appropriate responses to the questions. And the court is of the opinion that the statement was properly obtained, and the court will allow the statement in evidence, subject to proper predicate at trial.
¶ 16. The defense gave no specifics that the State was required to refute under Agee v. State, 185 So.2d 671 (Miss.1966). The proper procedure for proving the voluntariness of a confession has been clearly established:
The State has the burden of proving the voluntariness of a confession. This burden is met by the testimony of an officer, or other person having knowledge of the facts, that the confession was voluntarily made without any threats, coercion, or offer of reward. This makes out a prima facie case for the State on the question of voluntariness. When an objection is made to the introduction of the confession, the accused is entitled to a preliminary hearing on the question of the admissibility of the confession. This hearing is conducted in the absence of the jury.... [W]hen, after the State has made out a prima facie case as to the voluntariness of the confession, the accused offers testimony that violence, threats of violence, or offers of reward induced the confession, then the State must offer all the officers who were present when the accused was questioned and when the confession was signed, or give an adequate reason for the absence of any such witness.
Agee, 185 So.2d at 673 (citations omitted). The Agee rule remains a sound principle of law in this State. Thorson v. State, 653 So.2d 876, 888 (Miss.1994). Once the State makes a prima facie showing that the elicited confession was freely given and voluntary, further inquiry becomes mandatory "when the accused offers testimony that violence, threats of violence, or offers of reward induced the confession." Agee, 185 So.2d at 673.
¶ 17. The defense offered no testimony at the suppression hearing, or at the trial before the jury; thus, the State's prima facie case of voluntariness stands unchallenged. "[W]ithout rebuttal from the defendant, the State does not need to produce all of the witnesses to the confession to establish voluntariness, the prima facie case is sufficient." Cox v. State, 586 So.2d 761, 764 (Miss.1991). Detective Rocco, however, testified that no one else was present when he questioned Devance.
*325 ¶ 18. Under the totality of the circumstances, there is no error on the part of the circuit judge in allowing the video statement of the defendant into evidence. We affirm this issue.

CONCLUSION
¶ 19. Devance suggests in his conclusion that even if the individual errors he assigned were not sufficient to require a reversal, the cumulation of such errors is grounds for reversal. As stated before, the circuit court committed no error in allowing the testimony of the Adams and in allowing Devance's video statement, so there are no errors to cumulate and be grounds for reversal. For the reasons described in this opinion, the decision of the Harrison County Circuit Court is affirmed.
¶ 20. THE JUDGMENT OF THE HARRISON COUNTY CIRCUIT COURT OF CONVICTION ON COUNT I OF KIDNAPING AND SENTENCE OF TWENTY-FIVE YEARS; COUNT II OF AGGRAVATED ASSAULT AND SENTENCE OF TWENTY YEARS; COUNT III OF ARMED ROBBERY AND SENTENCE OF TWENTY-FIVE YEARS, WITH ALL COUNTS TO RUN CONCURRENTLY FOR A TOTAL OF TWENTY-FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HARRISON COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, IRVING, LEE, MOORE, MYERS, AND THOMAS, JJ., CONCUR.