GRIFFIS, J.,
for the Court.
¶ 1. Christopher Lee Bankston was convicted of aggravated assault. He was sentenced to serve a term of fifteen years in the custody of the Mississippi Department of Corrections, with fourteen years suspended, five years probation and a $500 fine.
¶ 2. On appeal, Bankston asserts the trial court erred in: (1) admitting statements into evidence as excited utterances, and (2) denying his motion for a mistrial. We find no error and affirm.
FACTS
¶ 3. Christopher Bankston, Clinton Pick-ens, and Deon “Prime Time” Jefferson were acquaintances living in Grenada, Mississippi. In January of 2002, the three were playing a game of basketball when Bankston alleges that Jefferson threatened him. Several days later, on January 18, 2002, Bankston saw Pickens and Jefferson driving around Grenada. According to Bankston, the two continued to drive past Parker’s Barber Shop, from where Bank-ston continued to watch. On their final pass, the two stopped and Bankston walked to the parking lot to meet them. Pickens met Bankston and informed him that Jefferson wanted to talk. Bankston testified that Jefferson emerged from the car, ran at him with one hand behind his back and pulled out a gun pointing it in his direction. A struggle ensued. Bankston got control of the gun and shot Jefferson. Bankston then turned and shot Pickens who died immediately.
¶ 4. Jefferson was severely wounded. He was found minutes later by Officer William Blackmon. Jefferson identified Bankston as the shooter. Bankston was arrested and indicted for the murder of Clinton Pickens and for aggravated assault of Deon “Prime Time” Jefferson. Before trial, Jefferson died from cardiac failure that was unrelated to the gunshot wound. Bankston was found not guilty of murder and guilty of the aggravated assault.
DISCUSSION

I. Whether the trial court erred in admitting the victim’s statements into evidence as excited utterances.

¶ 5. Bankston argues that it was error to allow Jefferson’s hearsay statements concerning the identity of the shooter. The State called Officer Blackmon to testify about what Jefferson said concerning the incident. Blackmon testified that he heard a single shot, immediately saw Jefferson backing away in the road, and then heard several additional shots. Minutes later, Blackmon found Jefferson bleeding from the head, staggering around, crying and screaming. Blackmon testified that he encountered Jefferson approximately four minutes after he heard the gunshots. *969 Bankston’s counsel objected to the following testimony offered by Blackmon:
Prosecutor: Okay. Would you tell the ladies and gentlemen of the jury ... when you first became aware of Deon’s presence over at the North West Street — North West Street Apartments. Tell them what he was doing, please.
Blackmon: When I saw Deon Jefferson standing in — when I was standing in the parking lot of Graeber Brothers’ parking lot, I looked through the cyclone fence. And I saw Deon Jefferson standing around, face crimson, blood everywhere on his face and head area. I called for an ambulance. I proceeded on over to the area where Deon was standing. I asked Deon. He was screaming for help this whole time. “Help. Help. Help.” So I go to Deon Jefferson. And I asked him, “Deon, what happened. Who did this to you?” Deon says to me “Chris Bankston did this to me. Chris Bank-ston shot me. Maggie Lee Bank-ston’s son, Chris Bankston.”
¶ 6. Bankston objected to Officer Blackmon’s testimony concerning Jefferson’s statements on the grounds that it was hearsay. Hearsay statements are excluded under Mississippi Rule of Evidence 801(c) which defines hearsay as “a statement, other than one made by the declar-ant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.” Clearly, Jefferson’s statement was hearsay. However, Mississippi Rule of Evidence 803(2) provides for an exception to the exclusion of hearsay evidence, namely a statement “relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.” The rationale for this exception is that one caught in a sudden, startling event lacks the capacity for calm reflection, tending to make such statements reliable. Smith v. State, 733 So.2d 793, 799(¶ 20)(Miss.1999). When evaluating whether a statement will qualify as an excited utterance, “it is important that there has been no intervening matter to eliminate the state of excitement and call into question the reliability of the utterance.” McCoy v. State, 878 So.2d 167, 173(¶ 12)(Miss.Ct.App.2004).
¶ 7. Jefferson’s statements were made in response to Officer Blackmon’s question. Spontaneity is essential to admit a statement into evidence as an excited utterance. However, “[t]he mere fact that the statement, as in this case, was in response to an inquiry, though bearing on the question of spontaneity, does not necessarily take a responsive statement outside the realm of admissible excited utterances.” Barnett v. State, 757 So.2d 323, 330(¶ 18)(Miss.Ct.App.2000). Where the alleged excited utterance is prompted by a simple question, even from an officer, such as “What happened?” or “What’s wrong?” we have still found the statement to fall under the exception. Carter v. State, 722 So.2d 1258, 1260(¶ 10)(Miss.1998). Jefferson was clearly still under the stress of the situation, and therefore the statements to Officer Blackmon do qualify as excited utterances.
¶ 8. Bankston also argues that given the elapsed time between the incident and Jefferson’s statements, these statements are not within the definition of excited utterances. Time is also a factor in determining the admissibility of a statement under the excited utterance exception. Time is a component of the primary concern that Jefferson still be so affected by the startling event as to justify his statement as being spontaneous and not the result of reflection. Devance v. State, 768 So.2d 319, 323(¶ 9)(Miss.Ct.App.2000). There is no hard and fast rule regarding *970 the interval of time passing between an event and a statement before the remark is classified as outside the excited utterance exception to the hearsay rule. Baine v. State, 606 So.2d 1076, 1079 (Miss.1992). Whether a statement was made while under the stress of an event is a decision best resolved by the trial court in its sound discretion. Davis v. State, 611 So.2d 906, 914 (Miss.1992).
¶ 9. The spontaneity was clearly evidenced in this case. Here, the statements were made to the first person, Officer Blackmon, on the scene. Jefferson made the statements approximately four minutes after the shooting. Officer Blackmon testified that Jefferson was hysterical when he encountered him. Jefferson was found “bleeding, crying, and screaming.” Based upon the short amount of time between the shooting and Jefferson’s statements, we agree that the statements were spontaneous. Hence, the statements fall under the excited utterance exception.
¶ 10. Since “the competency of excited utterances is a matter largely discretionary with our trial courts,” we find that the trial court did not err in admitting Blackmon’s testimony. Stokes v. State, 797 So.2d 381, 386(¶ 14)(Miss.Ct.App.2001). The trial judge has discretion to either accept or reject evidence offered. Austin v. State, 784 So.2d 186, 193(¶ 23) (Miss.2001). We will only reverse a trial court’s decision when an abuse of discretion results in prejudice to the accused. Id. at 193-94(¶ 23). Here, the trial judge found the testimony admissible under Rule 803(2) of the Mississippi Rules of Evidence, as an exception to the hearsay rule. The record supports that the trial court’s decision to admit the statement under the excited utterance exception. This issue lacks merit.

II. Whether the trial court erred in denying Bankston’s motion for a mistñal to remedy discovery violations committed by the State.

¶ 11. Bankston next argues that it was error for the trial court to deny his motion for a mistrial. He claims that the State’s delay in disclosing the new allegation obtained from Kelvin “Meeks” Myers’ interview was prejudicial, thereby warranting a mistrial. Bankston concedes that the defense was aware of Myers being scheduled to testify. However, he argues that Myers was only expected to testify to hearing Bankston threaten Jefferson on the basketball court a few days prior to the shootings. Nonetheless, in the State’s interview, Myers also claimed to be an eyewitness to the incident.
¶ 12. The State first interviewed Myers on the morning the trial began. During the interview, Myers described the alleged threat for the first time. Myers claimed that he saw a second shooter. He stated that he watched from the window of his home and witnessed an individual emerge from the opposite side of the street and begin to shoot in Pickens’ direction. It was Myers’ theory that this second individual shot Pickens rather than Bankston.
¶ 13. The defense was never advised by the State of Myers’ new allegation. The defense’s interview with Myers was not conducted until 8 p.m. after the first day of trial. During this interview, the defense also learned of Myers’ allegation of a second shooter. Realizing that the State had knowledge of this allegation, but failed to immediately disclose this information to defense counsel, Bankston made a motion for a mistrial arguing that a discovery violation had occurred.
¶ 14. On the following day a hearing was held, outside the presence of the jury, to determine whether a discovery violation had resulted from the State’s failure to notify the defense immediately of the new *971 information. Bankston argued that he had been prejudiced since the defense had learned of the evidence only on the previous night. The State responded that Myers’ testimony was not credible due to its inconsistency and that it would not be offered into evidence. Bankston’s counsel acknowledged that the inconsistencies and distinct changes in Myers’ testimony established a lack of credibility, but argued that the statements were worthy of further investigation. Bankston’s counsel concluded that had they known of this allegation earlier, they would have been able to investigate the validity of the statement by interviewing Myers’ mother and look for additional witnesses.
¶ 15. When a discovery violation is alleged, we must review the record to determine whether the procedure set forth in Box v. State, 437 So.2d 19, 23-25 (Miss.1983)(Robertson, J., specially concurring), was followed by the trial court. The Box guidelines have been clearly articulated and adopted in Uniform Rules of Circuit and County Court rule 9.04(1):
If during the course of trial, the prosecution attempts to introduce evidence which has not been timely disclosed to the defense as required by these rules, and the defense objects to the introduction for that reason, the court shall act as follows:
1. Grant the defense a reasonable opportunity to interview the newly discovered witness, to examine the newly produced documents, photographs or other evidence; and
2. If, after such opportunity, the defense claims unfair surprise or undue prejudice and seeks a continuance or mistrial, the court shall, in the interest of justice and absent unusual circumstances, exclude the evidence or grant a continuance for a period of time reasonably necessary for the defense to meet the non-disclosed evidence or grant a mistrial.
3.The court shall not be required to grant either a continuance or mistrial for such a discovery violation if the prosecution withdraws its efforts to introduce such evidence.
¶ 16. “The Box analysis only applies when the State withholds inculpatory evidence and then attempts to introduce that inculpatory evidence at trial.” Johnson v. State, 760 So.2d 33, 36(¶ 9)(Miss.Ct.App.2000). As in Johnson, we recognize that the State never attempted to introduce Myers’ testimony into evidence. Therefore, a review under Box was simply not mandated.
¶ 17. A grant or denial of a motion for a mistrial lies within the sound discretion of the trial court and will not be overturned on appeal unless the trial court abused its discretion. Easter v. State, 878 So.2d 10, 20(¶ 29)(Miss.2004). After a thorough review of the record, we find no prejudice suffered by Bankston. The alleged unduly prejudicial testimony was disclosed only hours after the State learned of the evidence. Additionally, the State never attempted to introduce Myers’ testimony. Furthermore, in an effort to cure the alleged violation, the trial court offered to Bankston’s counsel that he could subpoena Myers’ mother to ascertain whether Myers’ testimony would provide exculpatory evidence. This offer was refused. Indeed, Bankston was afforded a reasonable opportunity to determine whether he had been prejudiced. The trial court’s remedy for the discovery violation was sufficient and the court did not abuse its discretion in denying Bankston’s motion for a mistrial. Therefore, we find that this issue is without merit.
*972 ¶ 18. THE JUDGMENT OF THE CIRCUIT COURT OF GRENADA COUNTY OF CONVICTION OF COUNT II — AGGRAVATED ASSAULT AND SENTENCE OF FIFTEEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, FOURTEEN YEARS SUSPENDED FOR FIVE YEARS AND FIVE YEARS POST-RELEASE PROBATION IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE TAXED TO GRENADA COUNTY.
KING, C.J., BRIDGES AND LEE, P.JJ., IRVING, MYERS, CHANDLER, BARNES AND ISHEE, JJ. CONCUR.