FAIR, J.,
for the Court:
¶ 1. Alan Ross is before this Court for the third time. This appearance, like his first two, relates to a 1997 conviction and twenty-year sentence for sale of cocaine. For the third time, we affirm the trial court’s decision to deny him relief.
FACTS
¶ 2. In December 1998, Ross pled guilty to sale of crack cocaine and received a sentence of twenty years, with twelve to serve and the remaining eight suspended, but with five of the eight under post-release supervision.
¶ 3. He filed for post-conviction relief six months later, asserting ineffectiveness of trial counsel. This Court affirmed the denial of that petition in 2001.[1]
¶ 4. In May 2002, Ross achieved trusty status and began receiving ten days’ additional credit for every thirty days he served on his twelve-year incarceration. When the “trusty-time credit” statute was amended to provide for thirty days’ credit for thirty days of trusty time, he claimed entitlement to the increase. Ross’s increase was denied, and he filed for post-conviction relief, ultimately receiving his second opinion from this Court in 2006.[2] The amended statute, however, excluded those convicted of drug trafficking, and this Court denied Ross the extra twenty days’ credit he sought. The Court held, however, that he would continue to earn the ten-day trusty-time credit.
¶ 5. By the spring of 2008, Ross had “flat timed” the twelve-year incarceration provision of his sentence due to credit for time spent in jail prior to his conviction and trusty-time credit he had earned. In accord with the sentence, Ross was released and placed under post-release supervision. He started to work in construction and received, according to his later testimony, a contractor’s license.
¶ 6. In early November 2009, he was charged with receiving stolen property, and shortly thereafter, the Mississippi Department of Corrections (MDOC) initiated revocation proceedings. Ross waived his right to notice and/or a waiting period prior to a hearing, along with his right to a preliminary hearing. On June 14, 2010, after a hearing before the Circuit Court of Pontotoc County, his post-release supervision was revoked, and he was returned to the custody of the MDOC to serve the remaining six years and three months of the eight-year suspended portion of his sentence. Ross then filed his third petition, and on October 17, 2011, the trial court denied his petition.[3] Ross has presented the identical issues before this Court, which are set out below. The trial judge affirmed his prior revocation, basing his ruling solely on Ross’s failure to pay costs of court, a $750 fine, and twenty months worth of post-release supervision fees at $25 per month.
ISSUES
¶ 7. Ross asserts two grounds for reversal: (1) revocation of his probation was unconstitutional because, even though the primary reason for the revocation was his failure to pay his fine and court costs, the trial court failed to inquire as to his ability to pay the fine and costs; and (2) the trial *138 judge revoked his probation on the basis that he was simply arrested and charged with a crime. Ross argues that the State did not present evidence that he had, in fact, committed the crime for which he was charged.
STANDARD OF REVIEW
¶ 8. “In reviewing a trial court’s decision to deny a [petition] for post-conviction relief the standard of review is clear. The trial court’s denial will not be reversed absent a finding that the trial court’s decision was clearly erroneous.” Smith v. State, 806 So.2d 1148, 1150 (¶ 3) (Miss.Ct.App.2002). However, questions of law are reviewed de novo. Brown v. State, 731 So.2d 595, 598 (¶ 6) (Miss.1999).
DISCUSSION
1. Failure to Pay Fine, Fees, and Costs
¶ 9. Ross alleges that the court improperly revoked his probation solely based on his failure to pay his fine, without inquiring into the reasons for his failure to pay. The trial court ordered revocation for Ross’s failure to make payments on his fine and supervision fees. At the hearing, Ross admitted that he was behind in his payments — $238 in court costs, $750 in fines, and $500 in supervision fees. He also admitted that he could have paid those sums, but assumed that he could pay what he owed at any time during his supervised probation. Ross had more than three years of supervised probation to complete when he was arrested and his probation was revoked. He also asserts inability to pay.
¶ 10, The United States Supreme Court has stated:
[I]n revocation proceedings for failure to pay a fine or restitution, a sentencing court must inquire into the reasons for the failure to pay. If the probationer willfully refused to pay or failed to make sufficient bona fide efforts legally to acquire the resources to pay, the court may revoke probation and sentence the defendant to imprisonment within the authorized range of its sentencing authority. If the probationer could not pay despite sufficient bona fide efforts to acquire the resources to do so, the court must consider alternative measures of punishment other than imprisonment.
Bearden v. Georgia, 461 U.S. 660, 672, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983) (emphasis added).
¶ 11. If the State determines a fine or restitution to be the appropriate and adequate penalty for the crime, it may not thereafter imprison a person solely because he lacks the resources to pay. The United States Supreme Court has recognized the difference between an indigent defendant’s inability to pay and a defendant’s refusal to pay, explaining that “nothing in our decision today precludes imprisonment for willful refusal to pay a fine or court costs.” Williams v. Illinois, 399 U.S. 235, 242 n. 19, 90 S.Ct. 2018, 26 L.Ed.2d 586 (1970). Likewise in Tate v. Short, 401 U.S. 395, 400, 91 S.Ct. 668, 28 L.Ed.2d 130 (1971), the Court “emphasize[d] that our holding today does not suggest any constitutional infirmity in imprisonment of a defendant with the means to pay a fine who refuses or neglects to do so.” As explained m Bearden,
This distinction, based on the reasons for non-payment, is of critical importance here. If the probationer has willfully refused to pay the fine or restitution when he has the means to pay, the State is perfectly justified in using imprisonment as a sanction to enforce collection. Similarly, a probationer’s failure to make sufficient bona fide efforts to seek employment or bomw money in order to pay the fine or restitution may *139 reflect an insufficient concern for paying the debt he owes to society for his crime. In such a situation, the State is likewise justified in revoking probation and using imprisonment as an appropriate penalty for the offense. But if the probationer has made all reasonable efforts to pay the fine or restitution, and yet cannot do so through no fault of his own, it is fundamentally unfair to revoke probation automatically without considering whether adequate alternative methods of punishing the defendant are available.
Bearden, 461 U.S. at 668-69, 103 S.Ct. 2064 (emphasis added and internal citation omitted).
¶ 12. Ross heavily relies on Bearden to make his argument that his probation revocation is unconstitutional. However, Bearden is readily distinguishable from this case. The trial court in Bearden sentenced the defendant to imprisonment simply because he could not pay the fine, without considering the reasons for his inability to pay. In other words, the court automatically turned a fine into a prison sentence and provided no alternative for the indigent defendant.
¶ 13. The present case is, however, more analogous to our Court’s decision in Baldtuin v. State, 891 So.2d 274, 277 (¶ 9) (Miss.Ct.App.2004). This Court held that the trial court did not abuse its discretion by revoking probation for wire fraud based on the defendant’s failure to make restitution payments. Id. The defendant alleged, as in this case, that the court failed to make sufficient inquiry as to the defendant’s ability to pay. Id. at (¶ 6). The defendant never testified at his revocation hearing that he was indigent, but in fact stated that his former employer was going to rehire him. Id. at (¶ 8). Additionally, the defendant offered to have his wages garnished, and offered to have his tax refunds applied to restitution. Id.
¶ 14. The present case turns on whether Ross made “sufficient bona fide efforts” to make his payments. There was evidence in the record from which an ability to pay might have been inferred. Like the defendant in Baldwin, Ross did not testify that he was indigent. Rather, he stated that if he could be released, he would not have a problem making his payments. He also stated that he was a construction worker and had his construction license.
¶ 15. Mississippi Code Annotated section 99-19-20 (Rev.2012) states:
(1) When any court sentences a defendant to pay a fine, the court may order (a) that'the fine be paid immediately, or (b) that the fine be paid in installments to the clerk of said court or to the judge, if there be no clerk, or (c) that payment of the fine be a condition of probation, or (d) that the defendant be required to work on public property for public benefit under the direction of the sheriff for a specific number of hours, or (e) any combination of the above.
¶ 16. Here, the sentencing order is unclear as to when the payments/fines/fees were due. The records shows that there was no installment plan set up. Therefore, pursuant to section 99-19-20, Ross had to pay a fine immediately, or the fine was a condition of probation. Or the trial court could have required both. See Miss.Code Ann. § 99-19-20. The language in the sentencing order seems to indicate that the payments were due immediately, and the trial court so held at the revocation hearing. While Ross could not be held responsible for making payments while incarcerated, upon his release he became gainfully employed and, as he admitted, was making enough money to pay the costs and fines levied against him, and *140 could pay, as well, the meager sum of $25 per month toward costs of his supervision, as he was ordered to do.
2. Arrest as Cause for Revocation
¶ 17. Ross also submits that the trial court revoked his probation because of his arrest for receiving stolen goods. At the time of the hearing, he had merely been arrested on those charges, which were shortly thereafter modified to accessory after the fact to receiving stolen goods. The court was advised the charges would be brought before a grand jury in the near future. He was later indicted, tried, and found not guilty by a jury.
¶ 18. Ross also points out that the fact that he was arrested does not mean he committed the alleged probation violations. However, probation may be revoked based “upon a showing that the defendant ‘more likely than not’ violated the terms of probation.” Metcalf v. State, 904 So.2d 1222, 1225 (¶ 10) (Miss.Ct.App.2004) (citing Wallace v. State, 607 So.2d 1184, 1189-90 (Miss.1992)). At the hearing, the State presented evidence, including an investigative report from the officers who arrested Ross for receiving stolen property.
¶ 19. Had the trial judge affirmed revocation of Ross’s probation on these grounds, as asserted by Ross, a thorough discussion of the law on the burden of proof and the weight of evidence necessary for revocation based on unadjudicated charges, particularly in the context of later acquittal of those charges, would be necessary.
¶20. However, the trial court, in its order denying the post-conviction-relief petition filed by Ross, specifically denied relief solely on the basis of Ross’s failure to pay and declined to rule on or discuss this second issue, stating:
The Court will not address the Flowood charges since the failure to pay violation is dispositive. The Court conducted a revocation hearing to determine whether the Petitioner’s post-release supervision should be revoked. The Petitioner admitted that he was delinquent $500.00 in MDOC supervision fees and $988.00 in court costs. As such, the Court was correct in revoking the [p]ost-[r]elease [supervision and imposing the suspended sentence.
¶ 21. For the same reasons, this Court declines to address the second assignment of error submitted by Ross.
¶ 22. THE JUDGMENT OF THE PONTOTOC COUNTY CIRCUIT COURT DENYING THE PETITION FOR POST-CONVICTION RELIEF IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO PONTO-TOC COUNTY.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL AND JAMES, JJ., CONCUR.

. Ross v. State, 802 So.2d 171, 173 (¶ 1) (Miss.Ct.App.2001).

. Ross v. Epps, 922 So.2d 847, 849 (¶ 6) (Miss.Ct.App.2006).

.During the pendency of this appeal, Ross was granted parole and has since been released from the custody of the MDOC.