# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-KA-00860-COA

**MICAH WASHINGTON A/K/A MICAH L.**                           **APPELLANT**
**WASHINGTON**

**v.**

**STATE OF MISSISSIPPI**                                         **APPELLEE**

DATE OF JUDGMENT:               06/14/2022
TRIAL JUDGE:                    HON. DAVID H. STRONG JR.
COURT FROM WHICH APPEALED:      LINCOLN COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:         OFFICE OF STATE PUBLIC DEFENDER
                                BY: GEORGE T. HOLMES
ATTORNEY FOR APPELLEE:          OFFICE OF THE ATTORNEY GENERAL
                                BY: ALLISON ELIZABETH HORNE
NATURE OF THE CASE:             CRIMINAL - FELONY
DISPOSITION:                    AFFIRMED IN PART; VACATED AND
                                REMANDED IN PART - 11/07/2023
MOTION FOR REHEARING FILED:

**BEFORE CARLTON, P.J., McCARTY AND SMITH, JJ.**

**McCARTY, J., FOR THE COURT:**

¶1.    A man fired shots near a construction site as he drove down the highway, injuring a

construction worker. After he was found guilty of shooting into a vehicle and ordered to pay

restitution, he appealed. We find there was no error in the proof presented at trial and affirm

his conviction, but because the proof of restitution was unsubstantiated, we vacate and

remand in part.

## FACTS

¶2.    One morning as Kevin Clark was driving on Interstate 55, he heard what "sounded

like an 18-wheeler tire" had blown. He looked around to see if anyone had wrecked. But

instead Clark saw a man driving a Dodge Charger with his arm out the window holding a gun. He witnessed the man "fire off" several rounds as he drove down the interstate.

¶3.    The shooting happened near a construction site. At that time, several construction workers were present, including Joshua Odom. He was sitting in a company truck when he heard a "loud boom." After seeing that he had "blood [and] cuts everywhere," he realized someone had shot at him. He sustained injuries to his eye as a result of shattered glass.

¶4.    Seeing Odom's injuries, the workers began calling their safety director. When the director arrived, he saw Odom sitting in a company truck "with blood all over the left side of his face and his left arm." He also saw a "blown out" passenger side window and a "hole in the window on the driver's side."

¶5.    The shooter exited Interstate 55 onto U.S. Highway 84, and a BOLO was issued for the Dodge. After radar indicated the same Dodge was traveling 90 miles per hour in a 65-mile-per-hour zone, Highway Patrol Officer Marcus Fisher began pursuing the suspect "westbound on U.S. Highway 84." The suspect was driving erratically—alternating between the middle of the road and both lanes—despite other drivers traveling on that same road. After an extensive chase traveling at a speed "well over 100 miles [per] hour," the Dodge "wrecked out and hit a street sign."

¶6.    The shooter was later identified as Micah Washington. The Highway Patrol officer recounted that when he interrogated Washington later, the suspect admitted "he kn[e]w he shot in the air three times" while driving on Interstate 55. However, Washington told the officer he was just "trying to get cars to move out of his way" so he could "get to Natchez

2

to go to his dad's house" and get a vehicle "he always wanted." Washington was indicted for two felonies: drive-by shooting and shooting into a motor vehicle.

## PROCEDURAL HISTORY

¶7. At trial, James Latham, the safety director of the construction company, told the jury he received two phone calls about the shooting. First, Latham testified he was driving toward the construction site when he got a phone call from a worker "just north." He stated the worker told him "that our lab tech [Odom] had been shot by a car passing by and that he was injured." He said the worker told him the tech "was shot in the face."

¶8. The defense objected, arguing the testimony was hearsay. The trial judge responded, "I'm confident that it is likely an exception to the hearsay rule and a present sense impression. And I don't know if it's [an] excited utterance, but I have a suspicion it might be."

¶9. The director was then asked if the employee was actually present at the site when the incident happened. He agreed, explaining, "They were further north, yes. They were just north of it starting the lane closure."

¶10. The safety director then testified he "got a second call from [his] mechanic down the road, further south, that someone had come by and shot at them[.]" Defense counsel again objected, arguing the testimony was hearsay. The State responded, "[I]t's an 803 exception, excited utterance. If you see somebody shooting a gun, that would put me in an excited state[.]" Nonetheless, the court sustained the objection until a predicate for the exception was laid.

3

¶11. After further questioning, Latham testified the mechanic was "excited and panicked" when he called. The witness further related how the mechanic sounded "scared" and "[a]bout three octaves higher" than he normally sounded in the fifteen years they had worked together.

¶12. The trial court then overruled defense counsel's objection regarding the mechanic's statements and allowed the testimony. Latham then testified that during the phone call, the mechanic said that "a car came by and shot at him."

¶13. The jury ultimately acquitted Washington of drive-by shooting but found him guilty of shooting into a motor vehicle. He was sentenced to serve three years in the custody of the Mississippi Department of Corrections and two years of post-release supervision.

¶14. Additionally, Washington was ordered to pay court costs, a $250 fine, restitution of $1,000 to the construction company, and "full restitution" to the victim. He moved for a new trial or judgment notwithstanding the verdict, which the trial court denied. Washington appealed.

**DISCUSSION**

I. **Whether portions of Latham's testimony should have been excluded as hearsay.**

¶15. Washington argues two sequences in Latham's testimony were impermissible hearsay. He further contends that as a result of this error, his Sixth Amendment right to confront his accusers was violated.

¶16. "The standard of review regarding admission or exclusion of evidence is abuse of discretion." *Liddell v. State*, 281 So. 3d 34, 37 (¶5) (Miss. Ct. App. 2019). "We employ a

4

de novo standard of review when presented with constitutional issues." *Id.*

¶17. "Hearsay is an out-of-court statement offered to prove the truth of the matter asserted." *Crist v. Loyacono*, 65 So. 3d 837, 844 (¶21) (Miss. 2011). "So for an out-of-court statement to be admissible, it must either be offered for some other proper purpose, or fall into one of the enumerated exceptions to the general hearsay rule." *Id.* "[O]therwise it is subject to a confrontation objection." *Freeman v. State*, 121 So. 3d 888, 898 (¶24) (Miss. 2013).

### A.     Whether the first phone call was a present sense impression.

¶18. Washington argues that the safety director's testimony about the first phone call he received from a worker should have been excluded because it did not meet the exception of present sense impression. Specifically, he contends the testimony was improper because the construction workers did not have personal knowledge that specifically Odom had been shot, only a general knowledge of the shooting.

¶19. Mississippi Rule of Evidence 803 provides several exceptions to the rule against hearsay, including a present sense impression. A present sense impression is "[a] statement describing or explaining an event or condition, made while or immediately after the declarant perceived it." MRE 803(1). "This exception is based on the theory that the contemporaneous occurrence of the event and the statement render it unlikely that the declarant made a deliberate or conscious misrepresentation." *Murray v. State*, 345 So. 3d 610, 617 (¶14) (Miss. Ct. App. 2022). Notably, "[s]pontaneity is the essential factor" for determining if the exception applies. MRE 803, advisory committee note.

¶20.   In one case, we held that a murder victim's statements to friends in the hour before her murder were admissible as a present sense impression. *Kuebler v. State*, 205 So. 3d 623, 643-44 (Miss. Ct. App. 2015), *rev'd on other grounds*, 204 So. 3d 1220 (Miss. 2016).  After a night of constant verbal berating by a man, the victim called her friends, explaining that the man "was being 'mean' and 'ugly' to her." *Id.* at 631 (¶¶5, 8).  She also texted another friend, "Wake up . . . I need [yo]u to save me." *Id.* at (¶9).  She was later found dead. *Id.* at 632 (¶10).

¶21.   The trial court allowed the admission of the statements as present sense impression. *Id.* at 643 (¶58).  The defendant appealed, arguing the "statements [were] inadmissible hearsay and violated his right to confront witnesses." *Id.*  We held the statements were admissible as present sense impressions because the conversations occurred shortly before the victim's  death and described an event or condition made while she was perceiving the event or condition immediately thereafter. *Id.* at 643-44 (¶¶61-62).

¶22.   Similar to the phone call and text message in *Kuebler*, the first call the safety director received described an event "made . . . immediately after the declarant perceived it."  MRE 803(1).  The worker who called Latham specified Odom had been "shot in the face."  Latham testified the worker was at the site during the shooting and called the safety director immediately after the shooting occurred.  As we determined the messages in *Kuebler* were present sense impressions since they were made "shortly" before the victim's murder, here the near-instantaneous call made to the safety director qualifies under the exception as well.

¶23.   Therefore, the first phone call was properly admitted under the present sense

6

impression exception to the rule against hearsay.

### B. Whether the second call was an excited utterance.

¶24. Washington also argues that the safety director's testimony about the second phone call should have been excluded because it did not meet the excited utterance exception to hearsay. He contends that the testimony was improperly admitted because the mechanic did not have personal knowledge that Odom had been shot but only general knowledge of the shooting.

¶25. An excited utterance is "[a] statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." MRE 803(2). Like a present sense impression, "[s]pontaneity is [an] essential [element] to admit a statement into evidence as an excited utterance." *Bankston v. State*, 907 So. 2d 966, 969 (¶7) (Miss. Ct. App. 2005). "There is no hard and fast rule regarding the interval of time passing between an event and a statement before the remark is classified as outside the excited utterance exception to the hearsay rule." *Id.* at 969-70 (¶8). "The rationale for this exception is that one caught in a sudden, startling event lacks the capacity for calm reflection, tending to make such statements reliable." *Id.* at 969 (¶7).

¶26. In *Bankston*, we held that a victim's statements to a police officer were admissible as excited utterances. *Id.* at 970 (¶10). After a struggle between three men ensued, the defendant obtained control of a gun and shot the victim. *Id.* at 968 (¶3). Severely wounded, the victim was found by a police officer four minutes later, "face crimson," while "staggering around, crying and screaming." *Id.* at 968-69 (¶5). At trial, the officer testified that when

he asked the victim, "Who did this to you?" the victim responded, "Chris Bankston did this to me. Chris Bankston shot me. Maggie Lee Bankston's son, Chris Bankston." *Id.* at 969 (¶5).

¶27.     The evidence was admitted and the defendant was convicted.   The defendant appealed, arguing it was impermissible hearsay for the trial court to allow the police officer to recount the victim's statements.  *Id.* at 968 (¶5).  We held that although clearly hearsay, the victim—shocked, wounded, and bleeding—was "clearly still under the stress of the situation," qualifying the statement as an excited utterance under the hearsay rule. *Id.* at (¶7).

¶28.     Like the panicked victim's statement in *Bankston*, the second call the safety director received from his mechanic qualifies as an excited utterance.   The worker "reported *he* and others at the site had been shot at by a passing car."  It does not matter that the call was not about Odom because it was about the "sudden, startling event" of being shot at unexpectedly. Not only was the mechanic "excited and panicked," but the safety director testified that he sounded "scared" and "[a]bout three octaves higher" than he normally sounded.  The caller was clearly still under the stress of being shot at when he called the safety director.

¶29.     While it is unclear why the caller was not called to testify as to his own perception of the shooting, it was not an abuse of discretion to allow Latham to recount the caller's statement, as it constituted an excited utterance.

   **II.     Whether the imposition of restitution constitutes an illegal sentence.**

¶30.     Washington next argues that his sentence was illegal because there was insufficient evidence to support the order of restitution.

¶31.    Mississippi Code Annotated section 99-37-3(1) (Rev. 2020) allows the court to order restitution:

> When a person is convicted of criminal activities which have resulted in pecuniary damages, in addition to any other sentence it may impose, the court may order that the defendant make restitution to the victim; provided, however, that the justice court shall not order restitution in an amount exceeding Five Thousand Dollars ($5,000.00).

¶32.    In a recent case, we held that the trial court erred in ordering the defendant to pay restitution absent any supporting evidence. *Turner v. State*, 291 So. 3d 376, 386 (¶26) (Miss. Ct. App. 2020). In *Turner*, the defendant was ordered to pay $6,500 in restitution after a jury found him guilty of leaving the scene of an accident, resulting in the victim's death. *Id.* at 379 (¶1). The defendant appealed, arguing his restitution sentence was illegal. *Id.* at (¶2). We noted that Mississippi Code Annotated section 99-37-3(2) "describes what a court *shall* take into account when determining whether to award restitution":

> (a) The financial resources of the defendant and the burden that payment of restitution will impose, with due regard to the other obligations of the defendant;
> (b) The ability of the defendant to pay restitution on an installment basis or on other conditions to be fixed by the court; and
> (c) The rehabilitative effect on the defendant of the payment of restitution and the method of payment.

*Id.* at 385 (¶28).

¶33.    Heavily relying on the statute, we found that the "record [was] silent as to how the trial court arrived at $6,500 for the restitution amount," as the order was "not supported by any documents or testimony in the record," and the "trial court did not indicate whether it took into account *any* of the factors set forth in section 99-37-3(2)." *Id.* at 385-86 (¶28).

9

Due to the vagueness of the order, this Court reversed and remanded for a revised calculation. *Id.* at 386 (¶29).

¶34. During the trial here, the State attempted to offer testimony detailing the victim's medical treatment. Defense counsel objected, asserting that "nothing ha[d] been produced in discovery regarding any medical treatment" the victim received. The State moved on and did not introduce any proof on this point.

¶35. After trial and during the sentencing hearing, the State asked for "full restitution" for Odom's medical damages. Regarding how much, the prosecutor stated, "I don't have that amount." The trial court granted "full restitution" without specifying an amount. The trial court also ordered "$1,000 restitution to Dickerson & Bowen" for the damage to its truck, which was illustrated by photos introduced at trial.

¶36. Washington argues there was no testimony or documentary proof offered at sentencing for the amount of harm suffered by the victim or to the construction company's truck. To support this argument, he relies on a case where we held that a trial court erred in ordering a restitution amount not supported by the evidence presented. *Cummings v. State*, 58 So. 3d 715, 720 (¶27) (Miss. Ct. App. 2011). In *Cummings*, a woman was convicted of embezzlement. *Id.* at 716 (¶1). She was ordered to pay $34,411.04 in restitution. *Id*. at 717 (¶5). She appealed, arguing that "the State failed to show that this amount of money was embezzled from [the victim]." *Id*. at 719 (¶18). She specifically argued that the State "merely put on proof that $7,309.59 was missing[.]" *Id.*

¶37. "At the sentencing hearing, the State was asked what amount it had proven," but "the

prosecutor never gave the circuit judge a proper answer." *Id.* at 720 (¶27). We held that although the circuit court had the authority to order restitution, "there was no evidence offered . . . to support any amount of restitution greater than the [amount] proved at trial." *Id.* at 721 (¶29). As such, "[i]t was error for the circuit judge to order" a greater amount of restitution absent evidence to support it. *Id.* This Court "revers[ed] the judgment of restitution . . . and . . . remand[ed] th[e] case for resentencing so that the circuit court . . . [could] determine the proper amount." *Id*.

¶38. In response, the State argues there was no objection at sentencing, so the issue is barred on appeal. However, the State concedes that "this Court may remand for resentencing for the trial court to determine restitution." Because Washington concedes the issue was not raised during the sentencing hearing, he asks this Court to review for plain error.

¶39. "The plain-error doctrine must be applied only when certain conditions are met, such as when a violation 'seriously affects the fairness, integrity or public reputation of judicial proceedings.'" *Giles v. State*, 282 So. 3d 519, 525 (¶15) (Miss. Ct. App. 2019) (quoting *Starr v. State*, 997 So. 2d 262, 266 (¶11) (Miss. Ct. App. 2008)). "Additionally, plain-error review is properly utilized for correcting obvious instances of injustice or misapplied law." *Id*. "To determine if plain error has occurred, we must determine if the trial court has deviated from a legal rule, whether that error is plain, clear or obvious, and whether the error has prejudiced the outcome of the trial." *Id*. at (¶16).

¶40. In contrast to the lack of evidence regarding the costs of medical treatment, photos of the company truck's damage were introduced at trial. Among other things, the photos

depicted the driver's side window shattered with a bullet hole through it, as well as the passenger side window shattered with a portion of it shot out completely. The State also introduced the truck's certificate of title at trial.

¶41. When proof is lacking as to the amount of restitution, our precedent allows remand to properly calculate the restitution allowed by statute. *Brown v. State*, 178 So. 3d 1234, 1264-65 (¶¶59-60) (Miss. 2015) (vacating and remanding a restitution order when the amount ordered exceeded the evidence of loss presented at trial). Here, photos illustrating the damage done to the company truck were introduced during trial without any objection. Given this proof, we cannot say it was an abuse of discretion for the trial court to order $1,000 in restitution to Dickerson & Bowen.

¶42. Washington concedes he did not object to the imposition of restitution at sentencing. However, unlike the photos showing the truck's damage, the victim's medical records were never introduced at trial, as defense counsel objected to their introduction as a discovery violation. Just as in *Turner*, the order of "full restitution" was "not supported by any documents or testimony in the record."

¶43. Furthermore, the transcript of the sentencing hearing establishes the trial court did not assess any of the factors from section 99-37-3(2) when ordering Washington to pay restitution. When ordering a person to pay a certain amount under penalty of incarceration or fine, the order must be definite and free of ambiguity so they are put on notice of what is required of them, and can follow it accordingly. *Cf. Lindsay v. Lindsay*, 303 So. 3d 770, 779 (¶23) (Miss. Ct. App. 2020) (analyzing a contempt order and finding a "judgment must be

12

complete within itself[,] leaving open no matter or description or designation out of which contention may arise as to meaning").

¶44. In *Cummings*, when there was proof presented at trial of loss, but the restitution amount was unsubstantiated, we reversed and remanded so that the trial court "may determine the proper amount of restitution." *Cummings*, 58 So. 3d at 721 (¶29); *see also Brown*, 178 So. 3d at 1265 (¶61) ("[T]his Court vacates the restitution portion of Brown's sentence and remands the case for resentencing, in other words, for again determining restitution, consistent with this opinion"). In accord with that precedent, we vacate the restitution portion of Washington's sentence as to the "full restitution" to be paid to Odom, and we remand for resentencing as to the victim so that the trial court may apply the factors of the statute and determine restitution, if any.

## CONCLUSION

¶45. For the reasons set out above, we find it was not an abuse of discretion for the trial court to allow the witness to discuss the two phone calls, as both were subject to exceptions to the rule against hearsay. We affirm the conviction and the trial court's finding of restitution to the construction company, as there was evidentiary proof of the damage to the truck. However, we vacate the trial court's award of "full restitution" as to the harm suffered by the victim and remand to allow for a finding of loss, if any, in accord with the statute.

¶46. **AFFIRMED IN PART; VACATED AND REMANDED IN PART.**

**BARNES, C.J., CARLTON, P.J., GREENLEE, WESTBROOKS, McDONALD AND SMITH, JJ., CONCUR. LAWRENCE, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. EMFINGER, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION,**

13

**JOINED BY WILSON, P.J., AND LAWRENCE, J.**

**EMFINGER, J., CONCURRING IN PART AND DISSENTING IN PART:**

¶47.    I concur with Part I of the majority opinion in affirming Washington's conviction for shooting into a motor vehicle. Because I would find that Washington has waived the issue of the imposition of restitution, I respectfully dissent as to Part II.

¶48.    The majority cites and relies upon Mississippi Code Annotated section 99-37-3(2) (Rev. 2020) in its plain error analysis regarding restitution.[1] However, section 99-37-3(3) reads as follows:

> If the defendant objects to the imposition, amount or distribution of the restitution, the court shall, at the time of sentencing, allow him to be heard on such issue.

Concerning the application of section 99-37-3, in *Franklin v. State*, 170 So. 3d 481, 484 (¶¶9-10) (Miss. 2015), the Mississippi Supreme Court wrote:

> Franklin claims the trial court erred in assessing restitution because the trial court did not meet the requirements set forth in Mississippi Code Section 99-37-3 (Rev. 2007). The State contends that Franklin waived this issue by not objecting to the order of restitution at sentencing.
>
> We agree with the State. Franklin waived this issue by not objecting to the restitution order at trial. *See Harris v. State*, 757 So. 2d 195, 199 (Miss.2000) (holding that because the defendant did not object to the issue of restitution in the trial court, the issue was barred upon appeal); *see also Powell v. State*, 536 So. 2d 13, 17 (Miss.1988) (same); *Watts v. State*, 492 So. 2d 1281, 1290-91 (Miss. 1986) (same).

---

[1] Regardless of whether the trial court conducted the inquiry into a defendant's financial ability to pay restitution at the time of sentencing as set forth in section 99-37-3(2), it is clear that probation or post-release supervision cannot be revoked, and the defendant cannot be incarcerated solely for the failure to pay restitution if he does not then have the financial ability to pay. *See Ross v. State*, 122 So. 3d 136, 138 (¶¶9-12) (Miss. Ct. App. 2013); *accord Bearden v. Georgia*, 461 U.S. 660, 672 (1983).

¶49.   In the case at bar, Washington was present with counsel at sentencing and did not object to the imposition of restitution or the amount of restitution ordered. Further, subsequent to sentencing, Washington filed a "Motion for New Trial or for Judgment Notwithstanding the Verdict" and did not raise an objection to restitution at that time. Because Washington had two clear chances to raise the issue of restitution before the trial court and failed to do so, as in *Franklin*, I would find that this issue is barred on appeal. Therefore, I respectfully dissent as to Part II of the majority opinion.

**WILSON, P.J., AND LAWRENCE, J., JOIN THIS OPINION.**