THOMAS, J., for the court.
¶ 1. Stephen Sephus was found guilty in the Circuit Court of Pike County of burglary of a building. Sephus was sentenced to five years with the first thirty months to serve and the remaining thirty months to be served on post-release supervision. Se-phus was also ordered to pay a fine in the amount of $1,000, restitution of $875, court appointed attorney fees of $500, and court costs. Aggrieved, he asserts the following issue:
I. THE LOWER COURT ERRED IN FAILING TO GRANT A JUDGMENT NOTWITHSTANDING THE VERDICT OR IN THE ALTERNATIVE A NEW TRIAL BECAUSE THE VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.
Finding no error, we affirm.
FACTS
¶ 2. On July 27, 2000, Willadean Wilson went to a vacant house trailer that she owned with her husband in Pike County, *449 Mississippi. When she left the trailer, both air conditioning units were in place and the door was locked. What happened after Mrs. Wilson left the trailer is in dispute, but the following testimony and evidence was presented at trial.
¶ 3. Stephen Sephus testified that he and a young lady were riding in a van and that the young lady needed to use a restroom. Sephus and the young lady stopped at the trailer owned by Mr.’ and Mrs. Wilson, which Sephus claimed to have mistook for a shop. Sephus entered the trailer in order to determine if there was a restroom available. The young lady decided to drive down the road approximately three hundred feet and use the restroom in a wooded area. She then returned to the trailer where Sephus motioned for her to come in to use the restroom. At this point, Rebecca White, a tenant who lived in a mobile home directly behind the trailer Sephus had entered, heard noises from the trailer and went to investigate. Upon seeing Ms. White, Sephus testified that he became nervous about trespassing, so he got into the vehicle with the young lady and left.
¶ 4. Rebecca White notified the Wilsons about the trespasser she had seen, and she described Sephus and his van. The Wil-sons went to the trailer to investigate. They found the door unlocked and one air conditioner missing from the trailer. Another larger air conditioner had been removed and was sitting face down on the floor of the trailer.
¶ 5. The next day, Sephus and a friend drove down the road past the trailer. Mr. Wilson, former sheriff of Pike County, saw the van and recognized it from the description given by Ms. White. Mr. Wilson gave chase and made a citizen’s arrest of Se-phus. According to Sephus, Wilson took Sephus back to Mr. Wilson’s home and questioned him at gunpoint about the burglary of an air conditioner from the trailer Sephus had entered. Sephus remembered Wilson “programming” him to admit to the burglary. Wilson called the Pike County Sheriffs Office and notified them of his citizen’s arrest of Sephus. Deputies picked up Sephus and took him to the county jail.
¶ 6. After arriving at the county jail, Sephus gave a taped statement which is quite different from the testimony recounted above. In his statement, Sephus told the investigating officer that he had entered the trailer owned by the Wilsons through a window, unlocked and opened the door from the inside, and removed and carried away a small air conditioner which he sold for thirty dollars. Sephus and the young lady then returned to the trailer. Sephus instructed the young lady to drive away and then return in a few minutes, and he entered the trailer through the door he had previously unlocked in order to take a second, larger air conditioner. When the young lady returned in the van, Sephus motioned for her to pull into the driveway. The young lady pointed to Ms. White who had come to investigate noises coming from the trailer. Sephus got in the vehicle with the young lady and they drove away.
¶ 7. A few days after giving his statement, Sephus asked to retract his statement. The investigator asked Sephus if he had talked with some of the “jailhouse attorneys” or if he had seen the article in the paper by Mr. Wilson criticizing the current sheriff of Pike County. Sephus replied that he had. The officer told him that he did not have time to talk to Sephus and that he could retract his statement once he got an attorney. Sephus was tried January 30, 2001, and a jury found him guilty of burglary. It is from that conviction that Sephus appeals.
*450 ANALYSIS
I. DID THE LOWER COURT ERR IN FAILING TO GRANT A JUDGMENT NOTWITHSTANDING THE VERDICT OR IN THE ALTERNATIVE A NEW TRIAL BECAUSE THE VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE?
¶ 8. Sephus claims that evidence presented by the State did not satisfy both elements of the crime of burglary of a building. Sephus argues that he did not have the intent to commit a crime within the trailer when he entered it. He also argues that the rule of review should be that of circumstantial evidence and that this would bolster his position because “mere support for the State’s hypothesis in a case based entirely on circumstantial evidence is not enough, for it must be of such quality as to rise to the level of excluding every other reasonable hypothesis other than that of guilt.” Murphy v. State 566 So.2d 1201, 1204 (Miss.1990). Sephus claims that there was no direct evidence because his statement was coerced by Mr. Wilson.
¶ 9. In regard to his statement, Sephus did not raise the issue that the statement was coerced when it was before the lower court. A failure to object or file a motion to suppress contraband before the trial court procedurally bars the issue from being raised on appeal. Thornton v. State, 724 So.2d 1003, 1005(¶ 11) (Miss.Ct.App.1998). Sephus also fails to cite any authority supporting his claim. If the party does not provide this support, the court is under no duty to consider assignments of error when no authority is cited. Drennan v. State, 695 So.2d 581, 586 (Miss.1997). This Court is therefore under no obligation to consider the assignment. McClain v. State, 625 So.2d 774, 781 (Miss.1993).
¶ 10. Even if we were to examine the statement made by Sephus, we would find that it was not coerced. The “sole concern of the Fifth Amendment, on which Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) was based, is government coercion.” Evans v. State, 725 So.2d 613, 638(¶45) (Miss.1997)(quoting Colorado v. Connelly, 479 U.S. 157, 170, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986)). Indeed, the Fifth Amendment privilege is not concerned “with moral and psychological pressures to confess emanating from sources other than official coercion.” Evans, 725 So.2d at 638 (quoting Oregon v. Elstad, 470 U.S. 298, 305, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985)). Sephus claims to have been coerced by Mr. Wilson. Although Wilson was the former sheriff of Pike County, he was not a government official at the time Sephus gave his statement and was not present when the statement was taken.
¶ 11. “A circumstantial evidence instruction should be granted where the State is without a confession or eyewitnesses to the offense charged.” Austin v. State, 784 So.2d 186, 195(¶ 34) (Miss.2001). If there is a confession or any direct evidence, a circumstantial evidence instruction need not be given. Mack v. State, 481 So.2d 793, 795 (Miss.1985). The statement discussed above satisfies this element alone. However, there was also other direct evidence in the form of eyewitnesses and Sephus’s own inculpatory statements.
¶ 12. Sephus testified that he entered the trailer without authority. The lack of authority caused Sephus to leave upon seeing Ms. White. Ms. White testified that she heard a banging noise coming from the trailer and that upon investigating saw a van pull into the driveway and *451 the driver point her out to Sephus. Ms. White saw Sephus leave the trailer, get into the van, and drive away. Mrs. Wilson testified as to the location of the air conditioners and that the door was locked earlier in the day. Testimony was given that one air conditioner was missing and that a larger air conditioner had been moved and was lying on the floor in the trailer. This was consistent with the statement given to authorities by Sephus and is direct evidence nullifying the circumstantial evidence requirement.
¶ 13. A motion for a directed verdict, request for peremptory instruction, and motion for judgment notwithstanding the verdict (JNOV) challenge the legal sufficiency of the evidence. McClain, 625 So.2d at 778. “Since each requires consideration of the evidence before the court when made, this Court properly reviews the ruling on the last occasion the challenge was made in the trial court.” Id. This occurred when the lower court denied the motion for JNOV. Wetz v. State, 503 So.2d 803, 807-8 (Miss.1987). “If there is sufficient evidence to support a verdict of guilty, this Court will not reverse.” Meshell v. State, 506 So.2d 989, 990 (Miss.1987). See also Haymond v. State, 478 So.2d 297, 300 (Miss.1985); Fairley v. State, 467 So.2d 894, 902 (Miss.1985). There is sufficient evidence to support a verdict of guilty when there is competent and credible evidence as to each element of the offense which, when taken together with all inferences which reasonably may be drawn from the evidence, and considered in the light most favorable to the prosecution, permits a hypothetical reasonable juror to find the accused guilty beyond a reasonable doubt. McClain, 625 So.2d at 778.
¶ 14. When viewed under this standard, we find that there was sufficient evidence to find Sephus guilty of the crime of burglary. The evidence presented was enough for a reasonable juror to have found Sephus guilty. There was testimony upon which a juror could infer that Sephus had committed the crime, and a statement given by Sephus in which he confessed to the crime was properly admitted. This issue is without merit.
¶ 15. THE JUDGMENT OF THE CIRCUIT COURT OF PIKE COUNTY OF CONVICTION OF BURGLARY OF A BUILDING AND SENTENCE OF FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, THE FIRST THIRTY MONTHS TO BE SERVED WITH THE REMAINING THIRTY MONTHS TO BE SERVED ON POST RELEASE SUPERVISION; FINE OF $1,000, AND RESTITUTION OF $875 IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO PIKE COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, LEE, IRVING, MYERS, CHANDLER AND BRANTLEY, JJ„ CONCUR.