997 So.2d 262 (2008)
June Allen STARR, Jr. a/k/a June Allen Starr, Sr. a/k/a Allen June Starr, Jr., Appellant
v.
STATE of Mississippi, Appellee.
No. 2007-KA-01878-COA.
Court of Appeals of Mississippi.
December 16, 2008.
*263 Justin Taylor Cook, attorney for appellant.
Office of the Attorney General by Billy L. Gore, attorney for appellee.
Before LEE, P.J., CHANDLER and ISHEE, JJ.
CHANDLER, J., for the Court.
¶ 1. This appeal stems from the conviction in the Jackson County Circuit Court of June Allen Starr, Sr.,[1] for aggravated domestic assault. He was sentenced to serve twenty years in the custody of the Mississippi Department of Corrections. Starr appeals, arguing that his Fifth Amendment rights were violated when police officers proceeded with a custodial interrogation having not obtained a Miranda waiver, or, in the alternative, that his waiver was not voluntarily, knowingly, and intelligently made. Finding that his assignment of error is without merit, we affirm the conviction and sentence.

*264 FACTS AND PROCEDURAL HISTORY
¶ 2. On April 29, 2006, at approximately 8:00 p.m., officers of the Jackson County Sheriff's Department responded to a call that a shot had been fired at the Starr residence. Upon arriving, officers noticed a pool of blood in the carport and found Starr's wife, Brenda, lying semiconscious in their kitchen. She had been shot in the back. After the initial on-scene investigation, officers took Starr to a temporary police trailer for interrogation.[2] The trailer lacked video recording capacity, but the audio of the conversation was recorded. The taped conversation reveals that Detective Michael Wright informed Starr of his Miranda rights as follows:
Wright: Alright. Alright June, before we ask you any questions you must understand your rights. You have the right to remain silent. Anything you say can be used against you in court. You have the right to talk to a lawyer for advice before we ask you any questions and have him or her with you during questioning. If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish. If you decide to answer questions without a lawyer present you still have the right to stop answering at any time. You also have the right to stop answering at any time until you talk to a lawyer. Do you understand your rights, June? June?
June: (inaudible)
Wright: Do you understand your rights? Okay. What I need you to do, look at me now, reread what I just now read to you. Put your initials on these lines right here and sign right there by the x please.
June: (inaudible) what is this telling me man? To send me to prison?
Wright: June, I just want the truth and, and, and like I told you before, I just want the truth. That's it. Okay?
June: I, I'm telling you the truth.
The Miranda waiver was never signed, but Detective Wright testified at trial that Starr had nodded his head in the affirmative when he was asked if he understood his rights.
¶ 3. After the above exchange, Starr proceeded to tell officers that the entire incident was an accident. He claimed that Brenda had gotten into an argument with another woman, and the gun went off when he was trying to get it away from her. He explained that Brenda and "some girl" had gotten into an argument over a $14 haircut. The girl left, but then she came back to the Starr residence. At this point, Brenda went back outside. Starr heard a big racket and went outside. The girl had jumped in her car and taken off. Brenda was irate and yelled obscenities at the car as it sped away. Brenda spun around toward Starr, and he realized she had a gun in her hands. Starr reached for her arm, they both fell to the ground, and at some point during his attempt to get the gun away from her, the gun accidently went off  shooting Brenda in the back. While the details provided by Starr to the police during this interview conflict at times, he maintained throughout the interrogation that he did not purposefully shoot his wife.
¶ 4. Officer Edward Clark testified at trial that on the night of the shooting he asked Brenda, when she regained some level of consciousness, who had shot her. She responded "Allen, Allen, he know." *265 Officer Steven Chambers testified that he found a pistol with one shot missing and a projectile located next to the pool of blood in the Starrs' carport. Brenda testified that she was absolutely certain her husband shot her after they had argued. A neighbor testified that he went to check on the Starr residence after hearing the gunfire, but Starr told him everything was alright. Finally, Detective Wright testified that when he took Starr's statement that night, Starr nodded his head in the affirmative indicating he understood his Miranda rights. No objection was ever made at trial due to any alleged Miranda violation. The parties agreed that the tape should be played before the jury, and that copies of the transcription should be given to the jury. The tape recording and the transcribed copies were entered into evidence, without objection from Starr, while Detective Wright was on the stand.[3]
¶ 5. Starr testified in his own defense at trial and stated that he was under the influence of alcohol at the time he was interrogated by law enforcement officers. At trial, his story changed regarding how his wife had been accidently shot in the back. Starr stated that he and Brenda had gotten into an argument that evening. He claimed that his gun slipped out of his pants during the argument, and Brenda grabbed it. While he was trying to get the gun away from her, it discharged  accidently shooting her in the back. At this point in the trial, the State impeached Starr with references to the prior inconsistent statements from his police interview.
¶ 6. The jury found Starr guilty of aggravated domestic violence. Defense counsel filed a motion for a judgment notwithstanding the verdict (JNOV) and/or for a new trial, which was denied by the trial judge. The motion submitted to the trial court listed eight reasons Starr should be granted a new trial or a directed verdict. None of these reasons included the involuntariness of the statements made to the police. During the hearing on the post-trial motion, Allen's attorney did mention the taped interview that was played at trial:
[Allen's] statement to the police that was played to the jury was given when he was still drunk. He was upset by his wife being accidently shot and he was not competent at that time to give informed consent to give a statement. And, even though he talked, he refused to sign a Miranda waiver.
In response, the State argued at the hearing that:
And, on the audiotape, you hear the detective reading Mr. Starr his rights. And the detective clearly testified that Mr. Starr understood those rights. He responded appropriately to questions. And, if your Honor will recall, it was several hours after the incident when the tape was taken. Plus, there was no suppression hearing. There was no objection during the trial with regard to that tape going into evidence. And, I believe it was introduced by agreement. I'm not  I may be wrong on that.[[4]] So that is not an error in the trial.
The trial judge denied the motion for a new trial and a JNOV.
¶ 7. Starr now appeals claiming that his Fifth Amendment rights were violated *266 when police officers proceeded with a custodial interrogation without having obtained a Miranda waiver, or, in the alternative, his waiver was not made voluntarily, knowingly, and intelligently.

ANALYSIS
I. WHETHER THE FAILURE TO RAISE ALLEGED MIRANDA VIOLATIONS PROCEDURALLY BARS A SUBSEQUENT CHALLENGE ON APPEAL.
¶ 8. Starr concedes that counsel failed to make any objection based on alleged Miranda and Fifth Amendment violations before or during trial regarding the admission of the taped interrogation. The first objection to the admission of the evidence was during the hearing on his motion for a JNOV and/or for a new trial. The State contends that because of this, Starr is procedurally barred from raising the issue on appeal.
¶ 9. In Williams v. State, 971 So.2d 581, 590(¶ 29) (Miss.2007) (overruled on other grounds), the defendant raised his Miranda issue for the first time on appeal. The supreme court found that "[a]s a general rule, constitutional questions not asserted at the trial level are deemed waived." Id. (citing Pinkney v. State, 757 So.2d 297, 299(¶ 6) (Miss.2000)). Thus, the issue is procedurally barred. Id. "This Court is ill-suited to act as a fact-finder." Miller v. State, 956 So.2d 221, 225(¶ 11) (Miss.2007). An appellate court should only "determine and apply the law to the facts determined by the trier of fact." Southern v. Miss. State Hosp., 853 So.2d 1212, 1214(¶ 4) (Miss.2003).
¶ 10. Thus, the appropriate judicial body to rule on Starr's objection to the admissibility of his statements during the interrogation was the trial court. M.R.E. 104(a). Allen's failure to object to the admission of the evidence at trial constituted a waiver of his ability to appeal the issue. However, because the challenge involves a fundamental right, this Court will determine if the admission of the interrogation constituted plain error. M.R.A.P. 28(a)(3).
II. WHETHER THE ALLEGED MIRANDA VIOLATION WAS PLAIN ERROR.
¶ 11. "[A] party who fails to make a contemporaneous objection at trial must rely on plain error to raise the issue on appeal, because it is otherwise procedurally barred." Williams v. State, 794 So.2d 181, 187(¶ 23) (Miss.2001). The plain-error doctrine requires a party to prove that an error occurred which "resulted in a manifest miscarriage of justice." Id. This doctrine is only available when a defendant's substantive or fundamental rights have been violated. Id. The admission into evidence of the defendant's statement given in violation of Miranda is reviewable under the plain-error doctrine. Smith v. State, 907 So.2d 389, 393-94 (¶¶ 9-11) (Miss.Ct.App.2005) (this Court reviewed for plain error the defendant's allegation that his statement, given in violation of Miranda, was erroneously admitted into evidence; we found the violation did not rise to the level of plain error and that any error from the admission of the statement was harmless). To determine if plain error has occurred, this Court must look at whether the trial court deviated from a known legal rule, whether that deviation created an error which was plain, clear, or obvious, and whether the deviation prejudiced the eventual outcome of the trial. McGee v. State, 953 So.2d 211, 215(¶ 8) (Miss.2007).
¶ 12. The plain-error doctrine is only to be invoked when a violation "seriously affects the fairness, integrity or public reputation of judicial proceedings." *267 Porter v. State, 749 So.2d 250, 261(¶ 36) (Miss.Ct.App.1999) (quoting United States v. Olano, 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993)). Plain-error review should only be used for "correcting obvious instances of injustice or misapplied law." Smith v. State, 986 So.2d 290, 294(¶ 10) (Miss.2008) (quoting Newport v. Fact Concerts, Inc., 453 U.S. 247, 256, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981)). Therefore, we must determine if the admission into evidence of Starr's statements to the police was a plain error.
¶ 13. There is no question that Starr was adequately informed of his rights. He was fully apprised of them by Detective Wright at the outset of the police interrogation. The question, then, is whether Starr validly waived his rights, specifically his right to remain silent. The known legal rule with regard to a Miranda waiver is that the waiver must have been made knowingly and voluntarily. The United States Supreme Court has held the following concerning waiver of Miranda rights:
The question is not one of form, but rather whether the defendant in fact knowingly and voluntarily waived the rights delineated in the Miranda case. As was unequivocally said in Miranda, mere silence is not enough. That does not mean that the defendant's silence, coupled with an understanding of his rights and a course of conduct indicating waiver, may never support a conclusion that a defendant has waived his rights. The courts must presume that a defendant did not waive his rights; the prosecution's burden is great; but in at least some cases waiver can be clearly inferred from the actions and words of the person interrogated.
North Carolina v. Butler, 441 U.S. 369, 373, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979). "All that the prosecution must show is that the defendant was effectively advised of his rights and that he then intelligently and understandingly declined to exercise them." United States v. Montos, 421 F.2d 215, 224 (5th Cir.1970). Starr refused to sign the written waiver, but according to the testimony of Detective Wright, Starr nodded his head in the affirmative when he was asked if he understood the rights that had been read to him. The verbal exchange is evidenced by both the tape and the transcription.
¶ 14. The fact that Starr refused to sign the written waiver is not enough to establish the non-existence of a waiver. "An express written or oral statement of waiver of the right to remain silent or of the right to counsel is usually strong proof of the validity of that waiver, but is not inevitably either necessary or sufficient to establish waiver ... in at least some cases waiver can be clearly inferred from the actions and words of the person interrogated." Butler, 441 U.S. at 373, 99 S.Ct. 1755. In the section of the interview quoted above in which Starr refused to the sign the waiver (saying "what is this telling me man? To send me to prison?"), Starr never indicated that he did not want to talk. In fact, he assured Detective Wright that he was telling the truth and then actively participated in the interrogation. Nowhere in this exchange was there a clear invocation of his right to silence or a clear waiver. He never indicated that he did not want to talk, just that he did not want to go to prison. "The fact that [a defendant] failed to sign the waiver of rights form is not enough, in itself, to bar admission of the confessions, where other circumstances indicate that the statement was voluntarily given." United States v. Willis, 525 F.2d 657, 659 (5th Cir.1976).
¶ 15. The State presented the testimony of Detective Wright, as well as the interrogation transcript, which indicated *268 that when Starr showed concern about signing the waiver, the officers explained that they only wanted the truth. Starr assured the officers that he was telling the truth. He then answered questions and explained how the gun accidently fired. He indicated a willingness to talk by actively participating in the interrogation. See Jordan v. State, 995 So.2d 94(¶¶ 29-35) (Miss.2008) (supreme court held that trial court properly found the defendant waived his Miranda rights, despite his refusal to sign a waiver, by willingly participating in a discussion with law enforcement officers after being given his Miranda warnings). There was sufficient evidence from which it could be concluded that Starr's waiver of his rights was knowing and intelligent. Therefore, we cannot say that the trial court deviated from a known legal rule that resulted in plain, clear, or obvious error.
¶ 16. Even if we had determined that the trial court deviated from the legal rule of a knowing and voluntary waiver requirement, that error must also be prejudicial to the defendant. Miranda violations are subject to the harmless-error standard. United States v. Paul, 142 F.3d 836, 843 (5th Cir.1998). A Miranda violation will be considered harmless error if the trial record shows beyond a reasonable doubt that the admission of the evidence "was without any substantial prejudicial effect under all of the facts and circumstances of the case." Hopkins v. State, 799 So.2d 874, 879(¶ 10) (Miss.2001) (quoting Cooley v. State, 391 So.2d 614, 623 (Miss.1980)). This Court must determine whether "absent the ... unconstitutional effect, the evidence remains not only sufficient to support the verdict but so overwhelmingly so as to establish the guilt of the accused beyond a reasonable doubt." Paul, 142 F.3d at 843 (quoting United States v. Baldwin, 691 F.2d 718, 723 (5th Cir.1982)). Such a decision "requires an examination of the facts, the trial context of the error, and the prejudice created thereby as juxtaposed against the strength of the evidence of defendant's guilt." United States v. Dixon, 593 F.2d 626, 629 (5th Cir.1979).
¶ 17. We cannot say that by looking at the facts, the trial context of the alleged error, and the prejudice created, that the alleged Miranda violation requires reversal. Statements taken in violation of a defendant's Miranda rights can be brought in at trial to impeach that party if their prior statements are inconsistent with their at-trial testimony. Sipp v. State, 936 So.2d 326, 331(¶ 8) (Miss. 2006). The United States Supreme Court has stated that "[e]very criminal defendant is privileged to testify in his own defense, or to refuse to do so. But that privilege cannot be construed to include the right to commit perjury." Harris v. New York, 401 U.S. 222, 225, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971). Because Starr's testimony was inconsistent with what he told the police during his interrogation, the State would have been allowed to bring in these prior statements during his cross-examination.
¶ 18. We appreciate the fact that the tape and transcription were played before Starr testified and, therefore, were not used solely for impeachment. We also note that the jury was given copies of the transcript and heard the entire tape. However, the jury would have been aware of the content of the taped statements during their deliberation through the State's impeachment of Starr even if the tape was never played in its entirety. Any added prejudicial effect by hearing the tape played and receiving copies of the transcript is not enough to push any assumed Miranda violation past the point of harmless error when viewed in light of all other evidence presented at trial. The *269 tape and transcript do not contain an outright confession of guilt. It only details Starr's explanation of how his wife was accidently shot. This story is basically the same theory he presented at trial, with the exception of the inconsistent details. Those details are the same statements the State used to impeached him. Thus, the jury was not given the transcript of a tape where Starr confesses to purposefully shooting his wife  he has maintained his innocence since the police first arrived on the scene in response to the shots-fired call. The only thing that changed was the specifics of what occurred prior to Brenda being shot in the back.
¶ 19. Additionally, the State presented overwhelming evidence of guilt. The parties stipulated that Brenda was shot in the back by the specific gun introduced into evidence. The only real question was if Starr shot his wife intentionally. The State presented the testimony of Officer Clark, Officer Chambers, Brenda, Daryl Leggins (the neighbor who made the 911 call), and Detective Wright. The State also impeached Starr's testimony with his prior inconsistent statements made to the police regarding the sequence of events from that evening. The only person ever at the scene of the shooting to testify for the defense was Starr himself. All other evidence indicated that Starr shot his wife intentionally. Looking carefully at the trial transcripts, we find that the evidence overwhelmingly points to Starr's guilt. Therefore, any error caused by the admission of the tape and the transcript of the tape into evidence was harmless.

CONCLUSION
¶ 20. For the reasons stated, we affirm the conviction and sentence of the Jackson County Circuit Court.
¶ 21. THE JUDGMENT OF THE CIRCUIT COURT OF JACKSON COUNTY OF CONVICTION OF AGGRAVATED DOMESTIC ASSAULT AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF MISSISSIPPI DEPARTMENT OF CORRECTIONS AND A FINE OF $5,000 TO THE MISSISSIPPI CRIME VICTIMS' COMPENSATION FUND IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO JACKSON COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, BARNES AND ISHEE, JJ., CONCUR. CARLTON, J., CONCURS IN RESULT ONLY WITH SEPARATE WRITTEN OPINION JOINED BY GRIFFIS AND ROBERTS, JJ.
CARLTON, J., Concurring in Result Only:
¶ 22. I concur in result only in this case. I write to briefly explain my differences as to the analysis of the issue of whether the failure to raise the alleged Miranda violation barred a subsequent challenge on appeal to the taped interview of the defendant. With respect to the defendant's taped interview, the majority recognized that the defendant failed to object to the admission of the evidence at trial and, therefore, waived his ability to appeal this issue. However, the majority continues to state that since the challenge involved a fundamental right, this Court would determine if the admission of the interrogation constituted plain error.
¶ 23. I write separately to express my disagreement to evaluating this issue under the plain-error doctrine. The plain-error doctrine, in my view, has no role in the analysis of the issues and facts in this particular case. In this case, the defendant not only failed to assert either a motion to suppress or an objection to the admission of the taped interview, the defense also agreed to the admission of the interview at trial. The defendant gained *270 the strategic benefit at trial of having his statement via the taped interview, containing his theory of the case, i.e., accidental shooting, presented to the jury without having to testify and being subjected to cross-examination. Plain error should not apply where an error at trial arguably worked to a defendant's advantage.
¶ 24. To preserve the issue as to an alleged Miranda violation, the defendant should have asserted a motion to suppress or raised an objection at trial at the time of the admission of the interview. Constitutional issues not raised at trial are waived for purposes of appellate review. Cook v. State, 825 So.2d 678, 683(¶ 10) (Miss.Ct.App.2002). The defendant chose not to raise the issue until after the conclusion of the trial which resulted in an outcome adverse to him after previously agreeing to the admission of the taped interview during trial. Thus, the issue was waived and is procedurally barred. See, e.g., Hoops v. State, 681 So.2d 521, 536 (Miss.1996). To address this issue under the plain-error doctrine is inappropriate under the circumstances of this case.
GRIFFIS AND ROBERTS, JJ., JOIN THIS SEPARATE OPINION.
NOTES
[1] Starr is referred to, in the record, as both June and Allen.
[2] The police were forced to use the temporary trailer because Hurricane Katrina had damaged the offices where interrogations were normally conducted, as well as all of their audio-video equipment.
[3] It should noted that the tape and transcription were actually redacted by the State so as to exclude a section of the interview that discussed prior domestic violence, convictions, and arrests which would have been inadmissible under the Mississippi Rules of Evidence, and this was discussed with the trial judge before the introduction of the tape into evidence.
[4] The tape was introduced by agreement.