# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2024-KA-00920-COA

**JASON DEANGELO DAYS A/K/A JASON DAYS**  APPELLANT

**v.**

**STATE OF MISSISSIPPI**  APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 05/31/2024 |
| TRIAL JUDGE: | HON. KATHY KING JACKSON |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | JONATHAN MATTHEW EICHELBERGER |
| | MADELINE MARCANTEL ILES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: INDIA MARIAH SPRINKLE |
| DISTRICT ATTORNEY: | ANGEL MYERS McILRATH |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 06/02/2026 |
| MOTION FOR REHEARING FILED: | |

**BEFORE WILSON, P.J., McDONALD AND McCARTY, JJ.**

**McDONALD, J., FOR THE COURT:**

¶1.    A Jackson County Circuit Court jury found Jason Days guilty of one count of possession of 4.9 grams of methamphetamine under Mississippi Code Annotated section 41-29-139(c)(1)(C) (Rev. 2018)[1] with a firearm enhancement (Count I) and of one count of

---

[1] Mississippi Code Annotated section 41-29-139(c)(1)(C) provides:

A person shall be charged and sentenced as follows for a violation of this subsection with respect to:

(1) A controlled substance classified in Schedule I or II, except marijuana and synthetic cannabinoids:
. . . .
        (C) If two (2) or more grams or ten (10) or more dosage units, but less

possession of a firearm as a felon under Mississippi Code Annotated section 97-37-5 (Rev. 2020)[2] (Count II). For Count I, the trial court sentenced Days to sixteen years in the custody of the Mississippi Department of Corrections, with twelve years to serve and the remaining four years on post-release supervision. For Count II, the trial court sentenced Days to serve ten years in the custody of the Mississippi Department of Corrections, set to run concurrently with his sentence for Count I. After the court denied his motion for judgment notwithstanding the verdict (JNOV) or, in the alternative, for a new trial, Days appeals and requests we reverse and remand for a new trial, contending that (1) his assistance of counsel was inadequate for numerous reasons, including counsel's failure to prepare him for his plea hearing and failure to object to the admission of critical evidence, and (2) the court erred in admitting illegally obtained evidence and denying his pre-trial motion to suppress evidence.

---

than ten (10) grams or twenty (20) dosage units, by imprisonment for not more than eight (8) years or a fine of not more than Two Hundred Fifty Thousand Dollars ($250,000.00), or both.

[2] Mississippi Code Annotated section 97-37-5 provides in part:

(1) It shall be unlawful for any person who has been convicted of a felony under the laws of this state, any other state, or of the United States to possess any firearm or any bowie knife, dirk knife, butcher knife, switchblade knife, metallic knuckles, blackjack, or any muffler or silencer for any firearm unless such person has received a pardon for such felony, has received a relief from disability pursuant to Section 925(c) of Title 18 of the United States Code, or has received a certificate of rehabilitation pursuant to subsection (3) of this section.

(2) Any person violating this section shall be guilty of a felony and, upon conviction thereof, shall be fined not more than Five Thousand Dollars ($5,000.00), or committed to the custody of the State Department of Corrections for not less than one (1) year nor more than ten (10) years, or both.

Having reviewed the record and the arguments of counsel, we affirm Days' convictions and sentences.

## FACTS

*The Traffic Stop*

¶2.     On Saturday, November 28, 2020, Jackson County Sheriff's Deputy Jonathan Rayner stopped Jason Days, a thirty-five-year-old resident of Mobile, Alabama, for an obstructed license plate.  Rayner approached the vehicle, informed Days of the reason for the stop, and asked for his license, registration, and insurance information.  Rayner stated that he immediately detected the odor of marijuana and observed that Days appeared "extremely nervous" and avoided eye contact, and his hands were shaking.  When Rayner initially asked Days whether he had any weapons in the vehicle, Days avoided the question.  Rayner repeated the question, and after looking down, Days "mumbled something to the effect of no."

¶3.     Rayner then returned to his vehicle and verified Days' license and insurance, which revealed no issues.  Rayner walked back to Days' vehicle and asked him to step out, intending to conduct a vehicle search based on the marijuana odor.  As Days exited his vehicle, Rayner noticed a bulge on Days' right hip, which he suspected was a firearm.  Rayner escorted Days to the front of the patrol vehicle, told him to spread his legs, and began to prepare him for a body pat-down.  While conducting the pat-down, Days told Rayner that he was carrying a knife.  Days then removed the knife and his phone from his pockets and placed them on the hood of the patrol car.  Rayner responded, "That's cool, man.  Do you

have a gun on you?"  Days replied, "No, sir."

¶4.    Rayner then discovered an empty gun holster on Days' hip.  Rayner asked, "Where's the gun at, man?"  When Days did not respond, Rayner repeated the question.  Still, Days did not tell Rayner that he had a gun.  Rayner then handcuffed Days and told him, "[Y]ou're being detained, not arrested."  With Days handcuffed and standing at the patrol car, Rayner told Days he was being "finicky" and asked, "Who carries a holster without a gun?"  Again, Rayner asked Days where the gun was, and Days repeated that he did not have a gun in the car.  Rayner responded, "[B]e straight with me.  It's a simple traffic stop—illegal tag—no big deal.  I'll give you a verbal warning for that."

¶5.    Then, Rayner shifted the topic from the location of a firearm to the possession of marijuana.  Rayner told Days that he could "smell the marijuana" and asked him "how much weed is in the vehicle."  Days admitted that he had a "blunt in the ashtray."  Rayner continued questioning Days, again telling him to "be straight with [me]" and warning Days that if he lied and anything illegal besides marijuana was found on him, Rayner would take him to jail.

¶6.    Once again, Rayner questioned Days about the location of the gun.  Rayner told Days that it was legal to have a gun "if [he wasn't] a convicted felon and it ain't hot."[3]  After Rayner asked Days if the gun was under the seat, Days admitted that it was.  Days went on to explain that the gun was not stolen, saying, "I just ain't really supposed to have it.  I got

---

[3] A "hot" weapon is one that has been illegally obtained through theft or other means, or one that is sought after by law enforcement because of use in another crime.

4

in a little trouble about fifteen years ago when I was a teenager, sir. And I haven't gotten cleared for it." Rayner furthered his questioning, clarifying whether Days was a felon. Days confirmed that he was, but he also explained that although he was "convicted," he had "only been to jail—never been to prison—hadn't been to jail in years, not on probation," and that [he] had legally purchased the firearm in his own name at a gun show with no issue. Rayner asked dispatch to run a "Triple I"[4] to confirm if Days was a felon. His stated reason was "for officer safety" because Days said that he was a felon. However, dispatch would not complete this check. Days remained handcuffed as Rayner went to Days' vehicle to retrieve the handgun, which had been placed under the passenger seat. After finding the weapon, Rayner placed a follow-up call to the sheriff's department to ask why dispatch would not run the Triple I for officer safety.

¶7.     Rayner returned to Days and asked, "Where's the weed at," and "[D]id you say it's just a blunt in the ashtray?" Days asked Rayner, "Am I going to jail, sir?" Rayner replied, "Not at this time man. You're still being detained." Again, Rayner patted-down Days and requested consent to search the car. Days denied consent. Rayner walked away from Days and toward Days' vehicle, stating into his radio that he had probable cause. Rayner proceeded to the driver's side of the vehicle and started searching the door storage pocket. Days was able to retrieve his cell phone and make a phone call to inform another party of the stop by police, though he remained handcuffed. Days told the person on the phone, "I'm in Mississippi. They finna lock me up." Rayner continued to search the vehicle, next checking

---

[4] Triple I stands for Interstate Identification Index.

the center console, where he found a clear plastic bag containing a "white powdery substance." Rayner returned to Days, who remained handcuffed, and asked him what was the substance inside the bag. Days told the caller, "[L]et me call you right back," and he responded to Rayner that it was ecstasy.[5] Days remained on the call, and after seeing the baggie, he stated to the caller, "[T]hese folks are about to take me to jail."

¶8. Rayner asked Days if he had anything else on him, stating that additional items (contraband) on him would result in additional charges. Days stated that he did not have anything else on him, but he asked Rayner to get everything from his pockets. Rayner further searched Days' person, confiscated his cell phone, and placed Days in the back of the patrol vehicle.

¶9. Rayner continued to search Days' vehicle, ultimately recovering less than an ounce of what appeared to be marijuana and some pills.[6]

¶10. Rayner charged Days with possession of a weapon by a felon, possession of a controlled substance, misdemeanor possession of marijuana, and an improper tag violation. Rayner then transported Days to the Jackson County Adult Detention Center in Pascagoula, Mississippi.

*The Interview*

---

[5] Rayner conducted a field test on the white powdery substance, which indicated the substance was heroin and fentanyl. However, the Mississippi Forensics Laboratory's analysis determined that the white powdery substance was 4.9 grams of methamphetamine.

[6] At the time of the search, Days believed the pills were ecstasy pills. The Mississippi Forensics Laboratory's analysis would later determine that these pills were actually caffeine pills.

¶11. Days remained in custody over the weekend without a bond. On Monday, November 30, 2020, Deputy Henry Frank, a narcotics agent and member of the South Mississippi Metro Enforcement Team, took the lead on the investigation and interviewed Days. Frank read Days his *Miranda*[7] rights. Days verbally confirmed that he understood his rights and agreed to continue speaking with law enforcement without counsel present. Days explained that he had traveled across the Alabama state line to place a new sports-betting slip at the IP Casino in Biloxi. Further, Days explained that he owned the confiscated gun, that he had legally purchased the gun from a gun show in Alabama, and that it was registered in his name. Days explained that his youthful-offender status application concerning his previous crimes in Alabama had been denied. He then discussed his criminal history in Alabama, his purchase of the firearm, and how he acquired the white powdery substance he believed to be crushed ecstasy pills.

## PROCEDURAL HISTORY

¶12. A Jackson County grand jury indicted Days on October 20, 2022, on one count of possession of a controlled substance with a firearm enhancement and one count of unlawful possession of a firearm by a felon. During this time, Days' initial attorney, Jarrett Cox, withdrew after Days sent a letter to the circuit court clerk expressing that he felt as though he was being wrongfully indicted and that he had a letter from an Alabama judge that could prove his claims. Days retained another attorney, J.D. Taylor, and the case was continued numerous times.

---

[7] *Miranda v. Arizona*, 384 U.S. 436 (1966).

*Status and Guilty Plea Hearing*

¶13.   On May 28, 2024, at a status hearing, the State and the defense informed the court that they were prepared to proceed with the trial the following morning.  The next day, they told the court that Days wanted to plead guilty.  Days' counsel informed the court that he had submitted plea petitions that still needed completion and that he needed to speak with Days. The court questioned defense counsel to understand why he had not already conferred with his client regarding the plea.  After an off-the-record discussion, the court called the case again.

¶14.   Days indicated his desire to plead guilty.  But as the court began reviewing the plea petition, the court noticed that it was incomplete, lacking nearly all of Days' personal information and his signature.  The trial court, in an attempt to move the proceedings along and complete the missing information, stated, "Well, I'm going to ask you the questions that Mr. Taylor [(the attorney)] should have, but I'm going to do it for him; okay?"  When the court asked Days if he understood Count II, felon in possession of a firearm, Days stated, "Yes ma'am. But it's inaccurate."  He explained, "I was a teenager at the time, and the program that I finished, it was supposed to be dismissed, ma'am.  That's why there's been a delay in this whole ordeal."  The State represented that it possessed certified copies of records from Alabama indicating that Days had applied for youthful offender status but was denied.  The Court asked Days why he wanted to plead guilty if he was not a felon.  Defense counsel responded and stated that pleading guilty was in Days' best interest.

¶15.   When the court asked Days directly whether he wanted to plead guilty, he stated that

8

he did. However, when the questioning resumed, Days again contested his status as a felon, stating, "I have information showing that I'm not a convicted felon." The court advised Days of the rights he would waive by pleading guilty, and Days confirmed his understanding and described what led to the charges. The court accepted the plea, finding it was entered freely, voluntarily, and with a full understanding of his constitutional rights and consequences.

¶16. Defense counsel requested that the court defer sentencing to give him some time to gather mitigation evidence and for Days to remain out of jail until that time. The State objected, and the court denied the request. As the court explained its intent to proceed immediately with sentencing, Days stated, "Just go to trial." However, the court continued with the sentencing and allowed Days' fiancée, Marquita Lockhart, to speak on Days' behalf for sentencing purposes.

¶17. Lockhart did not offer mitigating evidence. Instead, she restarted the discussion that Days was not a felon and that she had hired an investigator to prove Days was not a felon and an Alabama attorney who could speak to the state's procedural standards. The court interjected that her information was "not even relevant right now. He's pled guilty to two felonies." Yet, Lockhart continued speaking to the court:

> [Lockhart]: Jason has not been convicted of those charges that are placed against him. Jason had a deferred prosecution that was issued by a Judge Herman Thomas, which was 20 years ago. Jason was given a five-year probation. Jason completed the five-year probation, and his case was dismissed.
>
> [Prosecutor Mobley]: . . . I've got a stack of records here certified by the Circuit Court of Mobile County that not only show that the defendant was convicted of a prior felony, Judge, and it's a robbery. He was revoked on the assault that he was convicted of in Alabama, so it's not[.]

9

[Court]: So he went to prison?

[Prosecutor Mobley]: . . . [H]e received a probationary sentence, but it was a felony probation sentence, Your Honor, and he was eventually revoked on that felony probation[.]

¶18. Then, Days continued to contest his felony status. Days stated that one of the felonies was not included in his National Crime Information Center ("NCIC") report, and another charge was nolle prosequied because it was inaccurate. He further added that "they were supposed to have gotten with the presiding judge to get the information."

¶19. After this exchange, the court realized that Days was again saying he was not guilty. The court stated, "Let's just bring the jury in and try this case. I'm really quite tired of this." When asked directly if he wanted a trial, Days responded, "Right now I have no choice because I'm not trying to get the max on prison time." The court asked again, "Do you want a trial?" Days answered, "Yes." The court quickly brought in the venire and commenced the trial.

*Trial*

¶20. Immediately before the venire entered the courtroom, defense counsel said that he had some pretrial motions, including a motion to suppress.[8] The court declined to hear counsel's oral motion to suppress, stating, "It's too late to bring them up now. We're in the middle of a trial. . . . You can bring them up as the evidence is attempted to be brought in." Jury selection proceeded, and the trial began.

¶21. The State called Deputy Rayner as its first witness. He testified about the traffic stop

_____

[8] However, there are no pretrial motions in the record, and the docket indicates none had been filed.

and the subsequent investigation. The State admitted into evidence the handgun, a photograph of the methamphetamine, and Rayner's body-camera footage, which captured Days' multiple incriminating statements while he was detained. Defense counsel did not object to the admission of this evidence. On cross-examination, defense counsel questioned Rayner about whether Days was in custody during the roadside questioning. Rayner ultimately admitted that Days was not free to leave during the questioning because he was detained; however, Days was not under arrest, meaning he was not going to jail. He also stated that all of the contraband was found after Days made incriminating statements while detained.

¶22. The State next called Deputy Henry Frank, who testified about his post-arrest investigation and interrogation of Days. The State played the video recording of Frank's interrogation interview, which was admitted into evidence without objection. The State also admitted a copy of Days' conviction and indictment from Alabama. Defense counsel did not object to the Alabama documents purportedly proving Days' prior conviction of a felony. During cross-examination, Frank admitted that although he confirmed that the physical document offered was from Alabama, he did not specialize in Alabama convictions or court proceedings.

¶23. As its final witness, the State called Erik Frazure of the Mississippi Forensics Laboratory, who testified about the drug analysis and confirmed the substance seized was methamphetamine. The State then rested.

¶24. Defense counsel moved for a directed verdict based on a *Miranda* challenge to the

11

admission of the gun and drugs, which the defense argued should have been excluded as fruit of the poisonous tree, i.e., the original illegal stop by Rayner. The court questioned whether a motion to suppress had actually been filed. After further review of his files, defense counsel confirmed to the court that he had not filed the pretrial motion to suppress. The court noted that defense counsel did not make a motion to suppress the evidence and that he had not objected when the evidence was offered, despite the court's instruction to object. The court denied the motion for a directed verdict.

¶25. Before presenting its case-in-chief, the defense disclosed to the court the identity of a potential witness, an attorney from Alabama familiar with the Mobile County court system, who could testify regarding the Alabama case records. The State objected to the witness due to lack of notice, and defense counsel acknowledged he had only learned of the witness the day before. The court initially indicated that the witness could not be called but subsequently told defense counsel, "You said you might have a witness. . . . So let them object to it and go from there." Defense counsel did not attempt to call the witness or make a proffer. When the jury returned, the defense rested.

¶26. The jury found Days guilty of both counts. The court sentenced Days to sixteen years, with twelve years to serve and four years of post-release supervision, for possession of methamphetamine with the firearm enhancement, and ten years to serve for felon in possession of a firearm, with the sentences set to run concurrently. Days filed a post-trial motion for JNOV or, in the alternative, a new trial. Following a hearing, the court denied the motion.

¶27. Days appealed, contending that he did not receive effective assistance of counsel prior to or during his trial and that the trial court erred when it refused to consider his pretrial motion to suppress.

## STANDARD OF REVIEW

¶28. "The standard of review for claims of ineffective assistance of counsel is de novo." *McDowell v. State*, 311 So. 3d 1252, 1260 (¶19) (Miss. Ct. App. 2021). "To prevail on an ineffective-assistance-of-counsel claim, a defendant must prove that counsel's performance was both deficient and prejudicial." *Id*.

¶29. "The standard of review for admission of evidence is abuse of discretion." *Debrow v. State*, 972 So. 2d 550, 552 (¶6) (Miss. 2007). "However, when a question of law is raised, the applicable standard of review is de novo." *Id*. "An appellate court may exercise its discretion to review an issue for plain error 'only where the error is clear or obvious and affects the party's substantial rights.'" *Brown v. State*, 402 So. 3d 765, 774 (¶50) (Miss. Ct. App. 2024).

## DISCUSSION

I. **Whether Days received ineffective assistance of counsel.**

¶30. Days contends that his trial counsel's performance was deficient in multiple ways, that these deficiencies were evident throughout the court proceedings, and that consequently he was severely prejudiced and should be granted a new trial. These deficiencies include counsel failing to: (1) adequately prepare Days for his guilty plea, (2) file a pretrial motion to suppress, (3) object to any of the evidence he sought to suppress, (4) object to the State's

13

flawed proof of the prior conviction, and (5) attempt to call a beneficial witness or make a proffer.

¶31. In order to prevail on a claim of ineffective assistance of counsel, Days must demonstrate both prongs of *Strickland*: (1) "that his trial attorney's performance was deficient" and (2) that this deficiency was prejudicial to his defense. *McDowell*, 311 So. 3d at 1266 (¶44) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "If either prong is not met, the claim fails." *Rasberry v. State*, 405 So. 3d 1281, 1289 (¶29) (Miss. Ct. App. 2025).

¶32. Mississippi Rule of Appellate Procedure 22(b) requires that issues be raised on direct appeal or they may be considered waived in subsequent proceedings:

> Issues which may be raised in post-conviction proceedings may also be raised on direct appeal if such issues are based on facts fully apparent from the record. Where the appellant is represented by counsel who did not represent the appellant at trial, the failure to raise such issues on direct appeal shall constitute a waiver barring consideration of the issues in post-conviction proceedings.

Because Days is represented on appeal by counsel different from trial counsel, under Rule 22(b), Days must raise any issues on direct appeal that are based on facts fully apparent from the record or waive those issues for purposes of any subsequent post-conviction relief proceeding, *Branch v. State*, 882 So. 2d 36, 49 (¶18) (Miss. 2004), including claims of ineffective assistance of counsel.

¶33. Despite the requirement of Rule 22(b) that appellate counsel raise issues that are apparent from the record, the Mississippi Supreme Court has held that "[o]rdinarily, claims of ineffective assistance of counsel are not addressed on direct appeal." *Owens v. State*, 269

14

So. 3d 1280, 1288 (¶29) (Miss. Ct. App. 2018). Further, the Supreme Court stated that "there is usually insufficient evidence within the record to evaluate the claim."[9] *Id*. "Generally," such "claims are more appropriately brought during post-conviction proceedings." *Rasberry*, 405 So. 3d at 1289 (¶28).

¶34. After reviewing the record, we decline to address the ineffective-assistance-of-counsel claim at this time. Although Days stipulated that the record is sufficient, the State did not, and the record is not sufficiently developed to permit this Court to resolve the issue without additional findings of fact by the trial court. Nor does the record before us affirmatively demonstrate ineffective assistance of counsel. Accordingly, we find that the claim is more appropriately raised in a motion for post-conviction collateral relief (PCR), and we decline to consider it on direct appeal. *McDowell*, 311 So. 3d at 1267 (¶47).

¶35. Days' claims of ineffective assistance of counsel are dismissed without prejudice to allow him to raise those issues in a properly filed PCR motion.

**II. Whether Days waived his right to appeal the trial court's denial of his motion to suppress.**

¶36. Days next contends that the trial court erred when it refused to hear his pretrial motion to suppress, which he attempted to raise ore tenus at the beginning of trial. Days further argues that the statements captured on Rayner's body-camera footage were illegally obtained

---

[9] "This Court will address such claims on direct appeal when [1] the record affirmatively shows ineffectiveness of constitutional dimensions, or [2] the parties stipulate that the record is adequate and the Court determines that the findings of fact by a trial judge able to consider the demeanor of witnesses, etc., are not needed." *Rasberry*, 405 So. 3d at 1289 (¶28). "In addition, we may address such claims on direct appeal when the record affirmatively shows that the claims are without merit." *Id*. (quotation mark omitted).

in violation of his *Miranda* rights, therefore, the admission of these statements violated his Fifth and Sixth Amendment rights under the federal Constitution, constituting plain error and requiring reversal. In response, the State argues that Days failed to file a pretrial motion to suppress, as required by Mississippi Rule of Criminal Procedure 16.1(a), that the trial court was not required to hear the ore tenus motion, and that his counsel failed to make objections regarding *Miranda* during trial, therefore waiving this issue on appeal. The State further argues that the trial court acted within its discretion in enforcing its scheduling order, declining to further delay the trial proceedings, and noting that Days had agreed to the terms of the order and signed it.

¶37. A failure to object or file a motion to suppress contraband before the trial court procedurally bars the issue from being raised on appeal. *Sephus v. State*, 815 So. 2d 447, 450 (¶9) (Miss. Ct. App. 2002). Because the defendant neither filed a motion to suppress nor objected to the admission of the evidence at trial, the issue is procedurally barred absent a showing of plain error on appeal. *See Woods v. State*, 175 So. 3d 579, 581 (¶10) (Miss. Ct. App. 2015). It is well-settled law in Mississippi that failure to make a contemporaneous objection regarding the admission of evidence at trial waives the argument for purposes of appeal. *Jones v. State*, 993 So. 2d 386, 391 (¶8) (Miss. Ct. App. 2008).

¶38. Mississippi Rule of Criminal Procedure 16.1(a), regarding motion deadlines, states:

> At arraignment or thereafter, *the court may set a reasonable deadline for the filing and hearing of all pretrial motions*. Pretrial motions shall include, but are not limited to, motions: to dismiss, to suppress evidence, to request discovery, for continuance, for severance, for appointment of experts, for mental examination, or for any other matters which may delay the trial.

16

MRCrP 16.1(a) (emphasis added). Further, the orderly administration of justice dictates that the trial judge be vested with a considerable amount of discretion with respect to trial calendaring and docket management. *Ross v. State*, 954 So. 2d 968, 992 (¶41) (Miss. 2007). Accordingly, a trial court's decision to enforce its scheduling order will not be overturned absent an abuse of discretion. *Id.*

¶39. In the instant case, Days did not file a pretrial motion to suppress to prevent abandonment on appeal or object to the body-camera footage containing the challenged statements introduced into evidence. Defense counsel informed the court that he had a pretrial motion to suppress, and the court, following its scheduling order, stated: "It's too late to bring them up now. We're in the middle of a trial. . . . *You can bring them up as the evidence is attempted to be brought in*." Then, the State began admitting the evidence. This was Days' opportunity to preserve the issue on appeal. But Days did not object when this evidence was admitted. Thus, the court admitted, without objection, the handgun, a photograph of the methamphetamine, Rayner's body-camera footage (which captured Days' multiple incriminating statements), the video recording of Frank's interrogation interview, and a copy of Days' conviction and indictment from Alabama. Days did not object at the time to any of this evidence being admitted. After defense counsel moved for a directed verdict on the evidence, the court again questioned whether he had *filed* a motion to suppress. Defense counsel reviewed his files and determined that he had *not* filed a pretrial motion to suppress.

¶40. Additionally, in this case, Days had signed the scheduling order, agreeing to comply

with its terms, including these:

> [A]ll pretrial motions be filed as soon as the moving party realizes the motion is necessary, but require no less than five days['] notice prior to the date of hearing. Failure to follow this procedure shall result in denial of the motion.

Although the record reflects that the case was initially set to be resolved through a guilty plea hearing, during that hearing, Days and his fiancée consistently contested his guilty status. Then, the court expressly asked Days if he wanted to proceed to trial, and Days responded that he wanted a jury trial. In response to Days' request, the court abandoned the plea hearing and quickly shifted to a jury trial. The trial court still acted within its discretion in enforcing its scheduling order and declining to consider the motion. MRCrP 16.1(a).

¶41. Accordingly, as Days concedes, his failure to make objections during the trial proceedings resulted in the argument being abandoned and the issue being waived on appeal.

### III. Whether the Court's admission of evidence against Days was plain error.

¶42. Days argues that the trial court erred by admitting the body-camera footage, which contained incriminating statements that he made before he was advised of his *Miranda* rights, violating his Fifth and Sixth Amendment rights. Although Days does not dispute that he waived the issue by failing to file a written motion and by not objecting at trial, he contends that the admission of the statements constituted plain error requiring reversal. The State argues that even without the statements obtained prior to giving Days his *Miranda* warnings, the jury was presented with sufficient evidence to convict Days of the charges. Further, the State argues, even if plain error exists, *Miranda* violations are subject to harmless error review.

¶43. The plain error doctrine permits this Court to recognize "obvious error which was not properly raised by the defendant and which affects a defendant's 'fundamental, substantive right.'" *Hollingsworth v. State*, 269 So. 3d 456, 458 (¶8) (Miss. Ct. App. 2018) (quoting *Burdette v. State*, 110 So. 3d 296, 303 (¶23) (Miss. 2013)). "To determine if plain error has occurred, this Court must look at whether the trial court deviated from a known legal rule, whether that deviation created an error which was plain, clear, or obvious, and whether the deviation prejudiced the eventual outcome of the trial." *Starr v. State*, 997 So. 2d 262, 266 (¶11) (Miss. Ct. App. 2008). Additionally, "[f]or the plain-error doctrine to apply, there must have been an error that resulted in a manifest miscarriage of justice or seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Hollingsworth*, 269 So. 3d at 458-59 (¶8). The plain error standard is applied "'only in unusual circumstances' to 'prevent a manifest miscarriage of justice.'" *Brady v. State*, 337 So. 3d 218, 227 (¶28) (Miss. 2022) (quoting *Goff v. State*, 14 So. 3d 625, 655 (Miss. 2009)). Moreover, the error is harmless "if the trial record shows beyond a reasonable doubt that the admission of the evidence 'was without any substantial prejudicial effect under all of the facts and circumstances of the case.'" *Starr*, 997 So. 2d at 268 (¶16) (quoting *Hopkins v. State*, 799 So. 2d 874, 879 (¶10) (Miss. 2001)).

¶44. This Court and the Mississippi Supreme Court have previously found that "[n]o legal rule requires a trial judge to sua sponte stop or strike arguably objectionable testimony." *Brady*, 337 So. 3d at 227 (¶29); *Lawson v. State*, 292 So. 3d 266, 277 (¶33) (Miss. Ct. App. 2019); *see also Demorst v. State*, 228 So. 3d 323, 328 (¶9) (Miss. Ct. App. 2017) ("[W]e are

aware of no legal rule requiring a trial court to sua sponte suppress evidence."). Here, as previously noted in Part II of this opinion, Days signed the trial court's scheduling order, which required pretrial motions to be filed before the start of trial, but Days never filed a written motion before the start of trial. Moreover, after missing the opportunity to file the pretrial motion to suppress, Days again missed his opportunity to object when the evidence was being admitted, even though the court had instructed him to object at the time of presentation of the evidence for admission. Motions to suppress evidence generally must be filed before trial, and the failure to do so without good cause has been held to constitute not only a procedural bar, but a waiver of the issue that precludes even plain error review because the court had no duty to sua sponte exclude the evidence presented in this case. *See Demorst*, 228 So. 3d at 328 (¶10).

¶45. Moreover, the obstructed tag gave Rayner probable cause to stop Days' vehicle. *See* Miss. Code Ann. § 27-19-31 (Rev. 2017). Additionally, the odor of marijuana implicated the plain-smell doctrine, which is recognized in Mississippi, and provided Rayner with probable cause to search the vehicle. *Mason v. State*, 42 So. 3d 629, 634 (¶14) (Miss. Ct. App. 2010). ("[T]he Mississippi Supreme Court has correlated 'plain smell' to the plain view doctrine, holding that the sense of smell is no less trustworthy than the sense of sight."). Even without Days' statements, during the vehicle search, Rayner would have discovered the firearm and the 4.9 grams of methamphetamine. In addition, Days did not challenge the admission or use of that evidence by not objecting when the evidence was used against him during the trial proceeding. The evidence secured during the custodial interrogation, i.e., after he was read

his *Miranda* rights, which was presented to the jury, was sufficient to convict Days.[10] Thus, we cannot say that the trial judge deviated from any "obvious" legal rule by not sua sponte suppressing the body-camera footage containing the alleged incriminating statements. Accordingly, based on the facts and the record before us, we find Days' plain-error argument without merit.

## CONCLUSION

¶46. We hold that Days' claim of ineffective assistance of counsel is dismissed without prejudice and can be raised in a properly filed PCR motion. Further, we hold that the trial court acted within its discretion when it declined to hear Days' pretrial request to suppress. Further, Days waived any arguments by failing to timely object to the admission of evidence. Accordingly, we affirm the trial court's denial of his pretrial motion to suppress, and we affirm Days' convictions and sentences.

¶47. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., WESTBROOKS, LAWRENCE, McCARTY, EMFINGER, WEDDLE AND LASSITTER ST. PÉ, JJ., CONCUR.**

---

[10] In this case, the better approach by Rayner would have been to give Days his *Miranda* rights upon his reasonable suspicion that Days possessed drugs or a gun.

21